Brabbits vs. The Chicago & Northwestern Railway Company.

## BRABBITS VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

NEGLIGENCE. (1–5) *Liability of master to servant for injuries resulting from neglect of fellow-servant; of servant invested with full power of master.*

EVIDENCE. (6) *Who may testify as an expert.* (7) *Evidence in the case sufficient to carry it to the jury.*

REVERSAL OF JUDGMENT: (8) *Not granted for erroneous rejection of evidence, where appellant not injured.*

APPEAL. (9) *Presumption as to instructions not preserved in bill of exceptions.*

| | |
|---|---|
| 38 | 289 |
| 82 | 310 |
| 38 | 289 |
| 88 | 419 |
| 38 | 289 |
| a106 | 193 |
| 38 | 289 |
| 109 | 168 |
| 38 | 289 |
| 54 LRA | 40n |
| 54 LRA | 46n |
| 54 LRA | 79n |
| 55 LRA | 102 |

1. It is well settled that a master is not liable to his servant for injuries caused by the negligence of a fellow-servant, in the same general employment or business.

2. It is equally well settled that under certain circumstances the whole power and authority of the master are invested in an employee or servant, in which case the negligence of the employee is *the negligence of the master.*

3. A railroad brakeman was injured in the course of his employment, while coupling two sections of a railway train; and there was evidence tending to show that the injury was caused by the use of a defective switch-engine. The engineer, whose duty it was, had several times previously notified the foreman of one of the company's repair shops of the defective condition of said engine. Such foreman had charge of all the men employed in said repair shop, and was the person to whom, by the rules of the company, such defect should have been reported; and it was his duty to see it repaired. Another person, known as the master mechanic, had general supervision of all repairs of the motive power, tools and machinery of the company, and general charge of all the men employed in the locomotive department, including the power to employ men in or discharge them from service in that department; while said foreman had no such power to employ or discharge men without the master mechanic's consent. *Held*, that an instruction to the effect that notice to such foreman of the defect was notice to the company, was correct.

4. The company owed a duty to its employee to keep in proper repair the engine used to propel the train on which the latter was employed; and said foreman being the person designated by it, to whom notice of any defect in the engine was to be given, and whose duty it was to repair it on receiving such notice, his negligence in that behalf was *the negligence of the company*, and the latter is liable for the injury caused thereby.

5. In deciding this cause upon common law principles, this court the more readily follows the cases sustaining these views, because they accord with the policy of this state declared and established (by ch. 173 of 1875) since the cause of action herein accrued.

6. A witness for plaintiff who testified that he had had control of a stationary steam engine, and that while he did not claim to be a practical engineer, he had fired and handled a locomotive, and understood an engine, was permitted to testify *as an expert* as to the effect of a leaky throttle-valve on a locomotive engine, in causing the injury complained of. *Held*, no error.

7. Upon the testimony in this case (for the substance of which see the opinion), there was no error in submitting to the jury the question whether plaintiff's injury was caused by a defective switch engine.

8. A judgment will not be reversed for the erroneous rejection of evidence, where it appears that the appellant could not have been injured thereby.

9. Where only a part of the instructions to the jury are preserved in the bill of exceptions, it must be presumed that they were properly instructed as to all other points.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover damages for injuries received by the plaintiff while in the service of the defendant as a brakeman on one of its trains, and when coupling cars at Clinton Junction, in the line of his duty in such employment, The plaintiff's hand was crushed and mutilated and permanently disabled by the sudden coming together of the cars which he was engaged in coupling. The complaint alleges these facts, and also charges that the injury was caused solely by the use of a defective and unsafe locomotive engine to propel the train on which the plaintiff was employed. The defect complained of was a leaky throttle valve, and the defendant is charged with knowledge of such defect, and with negligence in continuing to use the engine in its unsafe condition. The complaint details, with considerable particularity (which it is unnecessary to repeat here), the manner in which the alleged defect caused the injury, and the nature and effects of the injury.

The defendant, in its answer, admits the employment of the plaintiff, and that he was injured in coupling cars, as stated in

his complaint, but denies "that said injuries were caused through the fault or negligence of any one, unless it was through the fault and negligence of the plaintiff, or of a co-employee or coemployees, with said plaintiff, of the said defendant, in the common employment of the said defendant, for which fault or negligence (if it existed) the said defendant is not liable."

The cause was tried at the Jefferson county circuit court, and resulted in a verdict and judgment for the plaintiff. The testimony and rulings of the court are sufficiently stated in the opinion. The defendant appealed from the judgment.

*Hall & Skinner*, for appellant, contended, 1. That the evidence failed to show either that the engine was unsafe, or that the pretended defect was the cause of the injury. 2. That the company had performed its whole duty by employing competent workmen, furnishing proper and safe materials, and making proper arrangements and rules for repairs and management of its motive power; that the master mechanic was the person standing in the stead of the company itself, for whose negligence they might have been responsible; but that the foreman, McDermott, was only a fellow servant with the plaintiff in the same general department of the motive power, for whose neglect the company was not responsible. Shearm. & Redf. on Negl., §§ 86, 90, 92, 99, 100, 102, 103; *Laning v. R. R. Co.*, 49 N. Y., 533; *Cooper v. R. R. Co.*, 23 Wis., 668; *Moseley v. Chamberlain,* 18 id., 700; *Col. & Ind. R. R. Co. v. Arnold,* 31 Ind., 174; *Hard v. R. R. Co.*, 32 Vt., 473; *Wright v. R. R. Co.*, 25 N. Y., 562; 1 Redf. on R. W., 521–4; *Warner v. Railway Co.*, 39 N. Y., 468; *Ind. & Cin. R. R. Co. v. Love,* 10 Ind., 554; *Col. & Xenia R. R. Co. v. Webb,* 12 Ohio St., 475; *Wonder v. R. R. Co.*, 32 Md., 411; *Mobile R. R. Co. v. Thomas,* 42 Ala., 672; *Chamberlain v. R. R. Co.*, 7 Wis., 425; 11 id., 238. 3. That the question asked McDermott as to who employed the men in the round house, was proper in order to show who exercised the supervision and powers of a

master of the road, and that he was merely a fellow workman with the plaintiff.

*Weymouth & Hatch*, for respondents, with *L. S. Dixon* and *D. S. Wegg*, of counsel:

1. The questions asked McDermott relative to the employment of men in the round house, were clearly immaterial; but if not, the error was cured by subsequently allowing Tilden to testify on the same point.    2. The notice of the defect in the engine was properly given to the foreman, McDermott. He was the one appointed by the company for that purpose, and in no sense would notice to the master mechanic have been proper or binding upon the company.    *Fort v. R. R. Co.*, 2 Dillon, U. S. C. C. R., 259, 267, affirmed in 17 Wall., 553; *Laning v. R. R. Co.*, 49 N. Y., 532–3.    3. It is the imperative duty of the company to see that the engines, the road and its appurtenances are in a safe condition.    Responsibility for non-performance of this duty cannot be avoided by delegating it to any number of servants; for only in that manner can it be performed.    The person to whom this duty is entrusted is performing an act which the company is bound to do as principal, and for his neglect the company is responsible.    *Ford v. Fitchburg R. R. Co.*, 110 Mass., 240 (Albany L. J., Nov. 28, 1874, p. 343); *Frazier v. R. R. Co.*, 38 Pa. St., 111; *Wright v. R. R. Co.*, 28 Barb., 85; *Keegan v. Western R. R. Co.*, 4 Seld., 175; *Flike v. R. R. Co.*, 53 N. Y., 549; *Ill. Cent. R. R. Co. v. Welch*, 52 Ill., 183; *Kansas Pac. R. R. Co. v. Salmon*, 2 Cent. Law Jour. (July 16, 1875), 457; *T. P. & W. R. R. Co. v. Conroy*, 61 Ill., 162; *Hildebrand v. R'y Co.*, 47 Ind., 399; 28 Vt., 63; 47 Mo., 567; *Brothers v. Cartter*, 52 id., 373 (14 Am. R., 424); *Ryan v. Railway Co.*, 60 Ill., 171 (14 Am. R., 32); *T. W. & W. R'y Co. v. Frederick*, 6 Chi. Leg. News, 374; *C. & N. W. R'y Co. v. Taylor*, 6 id., 86; *C. & N. W. R'y v. Swett*, 45 Ill., 197; *C. & A. R. R. Co. v. Shannon*, 43 id., 338; *C. & N. W. R'y Co. v. Jackson*, 55 id., 492; *Gibson v. Pacific R. R. Co.*, 46 Mo., 163.

LYON, J.   It is claimed by the learned counsel for the defendant, that there is no testimony in the case tending to show that the engine attached to the train on which the plaintiff was employed, was defective or not reasonably safe; and that if there is any such testimony, there is none tending to prove that the defect therein caused the injury of which the plaintiff complains.   After a careful perusal of the testimony, we find ourselves unable to concur in either position.

Sinclair, the engineer in charge of the alleged defective engine, testified that it was defective in that the throttle valve leaked; and that the effects thereof were, that the engine wasted water; that it was not safe to leave it long on the side track; that it was harder to handle; and that it could not be used as well in switching.   Also (quoting his language), " the effect of a leaky valve is, that it [the engine] stops and stands quicker when you reverse it."   This witness evidently testifies under a strong bias in favor of the defendant, yet he admits that when the plaintiff was injured, he (the witness) remarked " that defendant would fix the throttle for the valve, now that a man had his hand hurt."   "I made the remark that I thought they would fix that throttle, now that a man got hurt."   This remark tends to show that the idea that the defect in the engine was the cause of the injury, was no mere afterthought of the plaintiff, but was immediately suggested to the mind of one present when the plaintiff was injured, and who perhaps was the best qualified to judge correctly as to the real cause of the injury.

Owen McDermott, a practical locomotive engineer, corroborated the testimony of Sinclair, and said that, when switching, an engine with a leaky throttle valve " might get the start of you, and give a jerk, and come and go too quick; she might be liable to do so.   The engine would start quicker on reversing it, if the throttle valve leaked."

To the same effect is the testimony of James Gates, a witness called by the plaintiff.   An objection was made on behalf

of the defendant, and overruled by the court, that this witness was not competent to testify as an expert. This objection may as well be considered and disposed of here as elsewhere. Gates testified that he then had control of a steam engine in the works of a manufacturing company at Jefferson, and that while he did not claim to be a practical engineer, and was not a first class locomotive engineer, he had fired and handled a locomotive and understood an engine. We think he was competent to testify to so plain and simple a matter as the effect of a leaky throttle valve. This witness says: "The unsafety of a leaky throttle valve arises partly because the engineer is unable to tell what steam he has in the cylinder." All of these witnesses testify that when the throttle valve leaks, steam escapes into the cylinder and makes the engine harder to manage.

The plaintiff testified that some cars loaded with iron had been run from a side track at Clinton Junction on the main track; that he went on the track, between them and the cars attached to the engine, to couple them; that when the engine had nearly stopped, he gave a signal, and the cars attached to the engine (quoting the language of the plaintiff) "came all of a sudden, and they caught me before I could get out of the way; they came all of a sudden, and caught my hand before I could get it out."

Very clearly, the foregoing testimony tends to prove that the engine was defective and unsafe to be used in switching; that an unusually sudden movement of that part of the train attached to the engine caused the injury complained of; and that the suddenness of such movement, and hence the injury, might have been caused by the leaky condition of the throttle valve.

It is true that Sinclair testified that the leak was slight, and gave his opinion that it had no influence in producing the injury; and Owen McDermott testified that he was speaking of the effects of a bad leak, and that a slight one would do little

or no harm.  It also appeared that the cars which the plaintiff was coupling when injured, were loaded with iron which projected beyond the ends of the cars, making the process of coupling more difficult and probably more dangerous.  But these facts, while they may weaken the force of the testimony tending to prove that the engine was defective and that such defect was the cause of the injury, do not obliterate such testimony.  That testimony still remains in the case; and the question whether it proves the facts which it tends to prove, was properly submitted to the jury.

The next, and indeed the controlling question in the case, arises upon the following instruction which the learned circuit judge gave the jury, and to which due exception was taken on behalf of the defendant: "If the company had any individual in their service, whose duty it was made by the company itself to take charge of the repairs of engines, to whom engineers were to report when engines became out of repair, and whose duty it was made by the company to act on such reports — to see that the engines were put in repair, — I must instruct you that if such notice was given to any person thus acting in behalf of the defendant in this case, such notice is good notice to the company."

That this instruction may be fully understood, it is necessary to state that the undisputed evidence in the case proves, that when the plaintiff was injured, one Jefferson McDermott was, and for a considerable length of time before had been, in the service of the defendant as foreman of its round house, or shop for the repair of engines, at Chicago; that he had charge of all the hands there employed; that when an engine was out of repair, it was the duty of the engineer thereof to report the fact to McDermott, whose duty it was to see that the same was repaired; that he was the proper person to whom the defect in the engine in question should have been reported (if such engine was defective or out of repair), and Sinclair was the proper person to make such report; that the defendant had

other shops of a similar character, at other points, each in charge of a foreman ; that one Tilden, who is called the master mechanic, had general supervision of all repairs of the motive power, tools and machinery of the defendant, and general charge of all the men employed in the locomotive department of the company, including the power to employ men in, or discharge them from, the service of the defendant in that department; and that the foreman had no such power to employ or discharge men without the consent of the master mechanic.

And here it will be convenient to dispose of another objection taken during the trial, and relied upon to reverse the judgment.    The foreman, McDermott, was asked, on behalf of the defendant, whose business it was to employ hands at the round house ; but an objection thereto was sustained, and the testimony excluded.    If the testimony was material, it was most favorable to the defendant (as will hereinafter appear), that it be proved that the witness had no power to employ the hands who worked under him.    That he had not, is an undisputed fact in the case, proved by the testimony of Tilden. Hence the defendant was not prejudiced by the ruling, and the rejection of the offered testimony (if erroneous) was not an error that will work a reversal of the judgment.

The testimony also tends to show that the alleged defect in the engine had existed several days before the plaintiff was injured, and that Sinclair had, before that time, reported such defect several times to McDermott, the foreman.

The instruction above quoted is the only instruction to the jury preserved in the record.    It must therefore be presumed, in favor of the judgment, that on all other points in the case the jury were correctly instructed.    *Killips v. The Putnam Fire Ins. Co.*, 28 Wis., 472.    And under the testimony in the case, it must also be presumed that the jury found that the engine was defective and unsafe ; that the defect caused the injury complained of ; and that the plaintiff was not guilty of any negligence which contributed thereto.    And here it may be ob-

served that there is nothing in the testimony which imputes or tends to impute negligence to the engineer. The jury must have found, further, that the foreman of the round house at Chicago, McDermott, had timely notice of the defect in the engine, and was guilty of negligence in that he failed to cause it to be repaired before the plaintiff was injured.

It is now too well settled to admit of controversy, that a master is not liable to his servant for injuries caused by the negligence of a fellow servant in the same general employment or business. It is just as well settled, that under certain circumstances the whole power and authority of the master is vested in an employee or servant, in which case the negligence of such employee is the negligence of the master. This occurs most frequently when the master is a corporation aggregate, and can only perform its functions by agents or servants.

In the instruction to which exception was taken, the court laid down a rule by which the jury were to determine whether the negligence of the foreman, in failing to cause the engine to be repaired after notice of the defect, was the negligence of the defendant. We are to determine whether the correct rule was given.

The learned counsel for the defendant concede that had the injury complained of been caused by the negligence of the master mechanic, instead of the foreman, the defendant would have been liable; and this, because the master mechanic has the general supervision and control of the whole locomotive department of the defendant, including the power to employ the workmen therein and to discharge them, while the functions of the foreman are limited and subordinate. That the defendant would have been liable, had the injury resulted from the negligence of the master mechanic, is fully established by numerous adjudged cases, and the concession of the counsel was not improvidently made. But the reason assigned why the defendant should be held liable for the negligence of the master mechanic, and not for the negligence

of the foreman, seems to us unsound. Each in his sphere was the agent of the defendant, charged with the performance of certain duties which the latter owed to the public and to its servants, and, on principle, it seems quite immaterial that one of them was subordinate to the other, or that he operated in a narrower field. The relations between them were not unlike those usually existing between the master mechanic and general manager or superintendent, or between the latter and the board of directors. The functions of a railway company must be performed by numerous servants or employees, and among these there must necessarily be a gradation of authority, arranged with reference to the business of the company. Where two of these are charged with the same duty, no good reason is perceived why the company should be held liable for the failure of one to perform such duty, and not for the failure of the other. In this case the master mechanic and foreman were each charged with the duty of causing all defective engines to be repaired; and the failure of either to do so, after notice that an engine is out of repair and unsafe, is negligence. On what principle can it be successfully maintained that the failure of the master mechanic to do so is to be imputed to the defendant as negligence, while the same failure by the foreman is his own negligence, and not that of the defendant? I confess my inability to answer the question.

We think the question whether the defendant is liable for the consequences of the negligence of the foreman, must be determined upon an entirely different principle. The defendant owed certain duties to the plaintiff. Among these was the duty to keep the engine used to propel the train upon which the plaintiff was employed, in proper repair. If such engine became out of repair and unsafe to the plaintiff, it became the duty of the defendant, on notice of the fact, to cause it to be repaired, or, at least, to cease using it until repaired. The defendant designated the foreman of the Chicago round house or repair shops, as the person to whom notice of defects should

be given, and charged him with the duty of repairing defective engines. Notice that the engine in question was out of repair was duly given to him, and he failed to cause it to be repaired. This was negligence, and because of it the plaintiff was injured. Was it the negligence of the defendant? In *Bass v. R'y Co.*, 36 Wis., 450, and again in *Craker v. R'y Co.*, id., 657, we held that for certain purposes 'the conductor of a train was clothed with the whole power and authority of the corporation, and that for those purposes the conductor is to be considered as the corporation itself. The reasons which constrained us so to hold are applicable here. If the nature of the employment and the safety of passengers require that a conductor be held to be the corporation itself, surely the safety of servants and employees require us to hold that the agent or employee whom the defendant has charged with the duty of repairing its engines, or causing them to be repaired, on notice to him that they are out of repair, represents the defendant, and that his negligence in that behalf is the negligence of the defendant. This necessarily results from the fact that the duty with which the agent or employee is thus charged, is a duty which the defendant owes to its employees. It would be monstrous to allow the defendant to relieve itself from all liability for a breach of that duty by simply charging one of its inferior officers or servants with its performance. We hold, therefore, that the instruction was correct — that notice to the foreman was notice to the defendant ; that the negligence of the foreman was the negligence of the defendant; and that the latter is liable to the plaintiff for the injuries received by him because of such negligence.

We have considered and determined the case upon common law principles, because, when the plaintiff was injured, there was no statute affecting the liability of the defendant. But since that time, ch. 173, Laws of 1875, has been enacted, which provides that a railway company shall be liable for all damages sustained by any of its employees, caused by the negli-

gence of another of its employees, the injured party being free from contributory negligence. In all cases which have arisen since the enactment of that law, or which may hereafter arise, in which a railway company is or may be the defendant, the question here determined cannot arise. And because nearly all actions of this character are brought against railway companies, the question above considered has become of comparatively little practical importance in this state. We have, however, extensively examined and carefully considered the authorities cited in the arguments of the respective counsel, and only refer to the legislation of 1875 as a reason why we do not deem it our duty in the present case to comment on those authorities at length. Our conclusion is sustained by many of the best considered cases, and we follow them because we believe they rest upon sound principles of law. And perhaps we follow them a little more freely because they accord with the policy of the state in this behalf, as declared and established by the legislation of 1875.

*By the Court.*— The judgment of the circuit court is affirmed.

RYAN, C. J., took no part in the decision of this cause.