## TEXAS MEXICAN RAILWAY v. E. B. WHITMORE.

SUPREME COURT, GALVESTON TERM, 1883.

*Railroad—Master and Servant—Negligence.*  Employes are presumed to take the natural risks incident to their employment, but are not presumed to take such risks as result from the master's negligence.

*Same—Agent.*—In the nature of things a corporation can only act through its officers and agents, and when a superintending agency, carrying with it the power to select, employ and discharge employes, is entrusted to an agent, his act, knowledge and negligence should be deemed that of the corporation, in reference to all matters, in regard to which the corporation has given to such agent the power to do those things which the corporation is bound to do for the protection of employes.

Appeal from Webb county.   Opinion by Stayton, J.

An examination of the several matters assigned as error, in detail, in this opinion, will not be attempted.

The assignments are very general in their character, but have all been considered, and we are of the opinion that

there was no error in overruling the general and special exceptions to the petition; and, we are further of the opinion that the charge, taken as a whole, in view of the uncontroverted facts in proof, was as favorable to the appellant as could have been given, and we will only consider such matters, in this opinion, as are necessary to the further disposition of the case.

It appears that, on the day of the injury to the appellee, he was in the employment of the appellee, as a carpenter, engaged in bridge building upon the appellant's railway; that in the construction of a bridge he and others were engaged, under the direction and control of one McDonald, who was employed by the appellant, and by it given control over the work and men engaged upon it, with full power to employ and discharge hands.

It further appears that in the prosecution of the work a a pile driver was used, which, on the day before the injury occurred, became defective, by reason of the breaking of what is known as the "snapper block," which is so constructed that when the hammer of the pile driver is drawn to such elevation as is desired, the pressure of the arms of the "snapper block" upon the upright beams upon and between which the hammer ascends and descends, the hold of the "snapper block" upon the hammer is released and it descends without hindrance upon the pile, after which the "snapper block" is lowered and attached to the hammer until it is elevated again to the highest point to which it is to be raised, when it releases its hold and the hammer may descend. It appears that there is such an adjustment to the "snapper block" that just before it reaches the point from which the hammer is to fall, it makes a noise to warn hands of the fall of the hammer, which may be heard for a considerable distance. When the injury occurred, the "snapper block" was not in use, but the rope by which the hammer was raised was attached to it, and ran over a pulley on the upper part of the pile driver and thence to and around a drum which was turned by a steam engine to elevate the hammer, which was permitted to fall by reversing the engine. On the day that the injury to appellee occurred, he, with others, was engaged in driving piles for a bridge, and after one had been partially driven, it lost its upright position, and it became necessary to restore it, when the appel-

lee was directed by McDonald, the foreman, to take a crow-bar and assist in replacing the pile in proper position.    To do this, it was necessary for him to go between the leads, or upright beams, between which the hammer ascends and falls, and to place the foot which was crushed, on one of the leads in such position that the hammer would crush it in falling. Appellee obeyed the instructions, while the other hands were assisting with a rope to adjust the pile, and while in that position, without any notice to the appellee, the engineer reversed the engine, and permitted the hammer to fall, which so crushed and injured his foot that amputation became necessary.    It appears that the engineer was under instructions from the foreman not to reverse the engine and permit the hammer to fall until he should direct him to do so ; but that upon the occasion when appellee was injured the engineer did reverse the engine, without direction from the foreman so to do, some other person, not identified by the evidence, having given such direction, which was heard by the foreman but not by the appellee

There was evidence tending to show that the engine with which the pile driver was operated was defective, and that the appellee knew nothing of such defects.

The evidence also shows that while the engineer was a skillful man, yet that he was careless and reckless in managing his engine with reference to the safety of men engaged at work with the pile driver ; and McDonald, the foreman, testified that such was his character, and that more than once he had cursed him for reversing the engine without orders from him ; but it does not appear that the appellee had notice of the careless or reckless character of the engineer, nor that he had done any act while the appellee had been in the work, which would indicate that such was his character.

The pleadings alleged the defects in the pile driver, and engine, and also the carelessness of the engineer, and that the same was known to the railway company, or might have been by the use of ordinary care, and negatived such knowledge upon the part of the appellee except in reference to the defect in the pile driver.

The immediate cause of the injury was not the defect in either the engine or pile driver, but was the carelessness or recklessness of the engineer in reversing the engine before

he was directed to do so by the foreman, McDonald, by whom he was instructed to look to him alone for orders to reverse the engine; hence it becomes unnecessary to consider what the rights of the parties would be if the injury had resulted from defective machinery, of which the appellee had notice, or might have had notice by the exercise of due care.

The position in which the appellee was working at the time of the injury was evidently one of danger; and in so far as he knew of any defects in the machinery, or by due care might have known of such defects, he took the risks incident to the work, although directed by the foreman to perform the particular act which he was doing at the time he received the injury, it not appearing that he was a man unaccustomed to the business; and if he knew or by due care might have known of the careless and reckless character of the engineer, then he took the risk of injury from his carelessness or recklessness, as he continued in the business and placed himself in a position to be injured by the act of that person. The general rule, that the master is not liable for an injury inflicted upon a servant by the carelessness, recklessness or fault of a fellow servant engaged in the common service is well recognized, and employes are presumed to take the natural risks incident to their employment, but are not presumed to take such risks as result from the master's negligence. The duty which a corporation owes to its servants is the same as every other master owes, the only difference between individuals and corporations in this respect being, that the individual can discharge the duty in person, while the corporation can only do so by its officers or agents. The rule in reference to the duty and obligation of a corporation in the employment of servants is thus well stated in Pierce on Railroads, p. 374; "The company, like any master, is under an obligation to its servants to use reasonable care to associate with them fellow-servants having the ordinary skill and care required in the service to be performed, and is liable to them for injuries resulting from the negligence and incompetency of fellow-servants, which might have been prevented by the exercise of such care. This duty and liability, like that which relates to the road and its appointments, is continuing, and governs the company both in the original choice of its servants, and in

their discharge when they subsequently become incompetent."

If, in the case under consideration, the foreman, McDonald, had been the master, instead of an agent, knowing, as he evidently did, the incompetency of the engineer, there could be but little, if any doubt, that he would have been liable to the appellee, if, while in his employment, without knowledge or means of knowledge by the appellee of the character of the engineer, he had been injured under the circumstances evidenced by the record. He knew of the carelessness of the engineer, in the very respect which led to the injury of the appellee.

He testified as follows: . "I had given him orders not to go ahead until I gave the word; to wait for my orders; he had to look to me for his orders to go ahead; I had not given him the order, but some one else did; I had often cursed him before that for not waiting for my orders; I had to see that everything was clear and all right before giving the orders to go ahead."

With this knowledge the engineer was continued in an employment, hazardous to the lives of all other employes, and without notice to appellee of such carelessness of the engineer, he was directed to perform an act made dangerous by the carelessness of the engineer, but for which the act might have been performed with safety Under the finding of the jury, the evidence and charge of the court being considered, it must be held that the appellee had no notice of the carelessness of the engineer, and that McDonald did have full notice.

It then becomes necessary to consider the relation of the foreman, McDonald, to the Railway Company, to determine whether his acts, knowledge and negligence are to be considered the acts, knowledge and negligence of the company or not. In the nature of things a coporation can only act through its officers and agents, and it would seem that when a superintending agency, carrying with it the power to select, employ and discharge employees, is entrusted to an agent, that his act, knowledge and negligence should be deemed that of the corporation, in reference to all matters, in regard to which the corporation has given to such agent the power to do those things which the corporation is bound to do for the protection of employees.

It may for the strongest reasons be held, that when a corporation clothes an agent with power to select, employ and discharge employes, and to manage and control the business in which they are engaged, that the corporation should be held responsible for the want of care by such agent, which leads to the employment of incompetent servants, by reason of whose negligence or incompetency injury results to other servants; for there is an implied duty, if not contract, upon the part of the master to employ competent and careful servants, with reference to which the engagement between the master and servant is made; and from this responsibility it seems reasonable that the master should not be permitted to discharge himself, by delegating his power to some other person to do that which is incumbent upon himself.

The duty of the master to furnish suitable and safe machinery and material, stands upon no higher or other ground than does the duty of the master to employ competent and careful servants. In reference to the duty of a corporation to furnish suitable machinery, in the case of Hough v. Railway Company, 100 U. S., Justice Harlan delivering the opinion of the court, and adopting the language of the supreme court of Massachusetts in the case of Ford v. Fitchburg R. R. Co., 110 Mass., 241, said: "The rule of law which exempted the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on his duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from that obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the

same person renders service by turn in each.  * * * The corporation is equally chargeable, whether the negligence was in originally failing to provide, or in afterwards failing to keep its machinery in safe condition."

Speaking upon the same subject in the case of Gilman v. Eastern, R. R. Co., 13 Gray, 440, Gray, Justice, said : "The master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable to any of their fellow-servants for his negligence in this respect. This care he can and must exercise, both in procuring and in keeping and maintaining such servants, structures and engines. If he knows, or in the exrercise of due care might have known, that his servants are incompetent, or his structures or engines insufficient, either at the time of procuring them or at any subsequent time, he fails in his duty. For the management of his machinery, and the conduct of his servants, he is not responsible to their fellow-servants, but he cannot avail himself of this exemption from responsibility when his own negligence in not having suitable instruments, whether persons or things, to do his work, causes injury to those in his employ. He cannot divest himself of his duty to have suitable instruments of any kind, by delegating to an agent their employment or selection, their superintendence or repair. A corporation must, and a master who has an extensive business, often does, perform this duty through officers or superintendents ; but the duty is his and not merely theirs, and for negligence of his duty in this respect he is responsible."

The same principles are announced in the following cases : (Tyson v. S. & N. Ala. R. R. Co., 61 Ala. 557 ; Booth v. B. & A. R. R. Co., 73 N. Y., 40 ; Frazier v. The Pa. R. R. Co., 38 Pa. St., 111 ; Babbit v. The Chicago & N. W. R. R. Co., 38 Wis., 299 ; Kansas Pacific R. R. Co. v. Little, 19 Kansas, 267 ; Mobile & Montgomery R. R. Co. v. Smith, 59 Ala., 246 ; The Cumberland and P. R. R. Co. v. Moran, 44 Maryland, 284). The same principles are recognized by this court in the case of Railway Co. v. Dunham, 49 Texas, 188.

An application of these principles to this case, fixes upon the appellant a liability to the appellee for the injury which he received. McDonald was its representative, to whom it

had confided a duty which was its own. However careful he
may have been in selecting the engineer in the first instance,
he knew at the time the injury occurred, and prior to that
time, that the engineer was unfit for the employment,
and yet he continued him in an employment by which he
imperilled the lives of other employes.

It not appearing that the appellee had notice, or might
have had notice, of the careless and reckless character of
the engineer by the exercise of due care, the judgment
must be and is affirmed.