Mo. Pac. R'y Co. v. W. P. Hill.

(No. 2909.)

Appeal from Anderson County.    Opinion by White, P. J.

Jno. Young Gooch, counsel for appellant.

W. Q. Reeves, counsel for appellee.

§ **381.** *Liability of employer for injuries received by employee in consequence of defective tools furnished him to labor with; rules as to; case stated.* Appellee sued appellant to recover damages for personal injuries received by him while laboring in appellant's employ with a defective hammer, said hammer having been furnished him by appellant with which to do certain work, and said hammer being defective, by reason of which defect he received said injuries. Appellant pleaded a general denial and contributory negligence on the part of appellee. Judgment for appellee for $945 and costs.

The testimony shows that W. P. Hill was employed as a "helper" by the appellant, the railway company, at the time he was injured, and had been so employed for several months; that it was his duty to do whatever was

assigned him in and about defendant's machine-shops at Palestine, Texas. Appellant had also at said shops a great many other "helpers" and other workmen at work. That, on the day appellee was injured, Mr. Brown, superintendent of the shop, told him to take the "kid" (a new employee) and drive the rivets out of an iron tank used formerly in an engine. Hill, Brown and the "kid" were then standing beside the tank. Hill got a hammer from among many others like it from the shop. These hammers are called backing hammers, have handles about three feet long, and weigh about six or eight pounds. The hammer, and the others like it, belonged to appellant, and were furnished by it to its employees to drive the rivets (which are of iron or steel) out of iron boilers. When Hill took the hammer, he went with it to the tank with the "kid," whose name was Mr. Myers. At this time, and before any work was done with the hammer or on the tank, another "helper" of appellant, named Thomas, came up to Hill and Myers, bringing another backing hammer, and said that Mr. Brown said for them to take that hammer and let him, Thomas, have the hammer which Hill took from the shop. Myers, who had the hammer in his hands, threw it on the ground and picked up the one that Thomas brought. Then Hill held the punch against the head of the rivet, and Myers, standing in front with the hammer, struck it a "tap" or light blow, so as to get the range, and then struck a regular blow, when the hammer flew from its handle and struck Hill on the head, inflicting a serious injury and damage. This was the first blow attempted to be struck with the hammer. Hill and Myers were pursuing the usual and ordinary manner of driving rivets out of iron tanks. Hill knew nothing of the defect in the hammer, and had never seen it before. It appeared like the other hammers, and was apparently, from sight, all right. There was no evidence that appellant or its servants knew that it was loose.

*Held:* In the case of R'y Co. v. McCarthy, 64 Tex. 632,

it is said, "with reference to the duty of the employer in furnishing instrumentalities to be used by the employee the authorities all agree that the former is bound to exercise reasonable care in the choice or selection of such instrumentalities, and as between them the former is not an insurer. If reasonable care has been exercised in making the selection the employer will not be held liable for a mistake in judgment." [Citing Wood on Master and Servant, §§ 344, 345; 2 Thompson on Neg. pp. 270–272; Pierce on Railroads, § 370.]

In the case of R'y Co. v. Bradford, 66 Tex. 732, it is said, "the liability of the master to the servant for injuries resulting from the use of defective implements arises from the fact that it is the duty of the master to furnish implements not defective; and a servant, unless the defect be patent, may assume that the master in this respect has performed his duty. . . It is not the duty of the servant to assume and exercise the duties of an inspector, that he may detect imperfections in implements not open to common observation; but if he knows of such imperfections, then it is incumbent upon him not to expose himself to damage resulting from them." The rule that the master must exercise proper care to furnish safe machinery and appliances to perform the service in which the employee is engaged extends to all classes of business." [R'y Co. v. O'Hara, 64 Tex. 600.] "The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risk of the master's negligence in this respect." [R'y Co. v. Whitmore, 58 Tex. 288; Ford v. Fitchburg, 110 Mass. 241.] "In reference to this matter the employee may well, to some extent at least, rely on the faithful per-

formance of duty on the part of his employer, and, therefore, what might be ordinary care in avoiding an independent danger might well not be required to the same extent to guard against a breach of duty on the part of another which the party could have no right to anticipate." [Guthrie v. R. R. Co. 11 Lea (Tenn.), 372; S. C. 15 Am. & Eng. R. R. Cases, 209. See, also, R. R. Co. v. Duffield, 18 Am. & Eng. R. R. Cases.]

Applying the principles above stated to the facts of this case the judgment is supported by the law and the evidence. When appellee was entering upon the duty assigned him he took the precaution to select the hammer to be used. Brown, appellant's superintendent, deprived him of the selected hammer and replaced it with the one which inflicted the injury. The hammer furnished by Brown "appeared like other hammers, and was apparently, from sight, all right." Appellee had the right to believe that the hammer was safe and suitable for the work he was engaged in. [See, also, R'y Co. v. Silliphant, 8 S. W. Rep. 673.]

November 17, 1888.          '          Affirmed.