## MARY A. STEPHENSON ET AL. V. JOHN H. YEARGAN ET AL.

Delivered June 2, 1897.

**1. Evidence—Notice—Knowledge and Fraud of Agent.**

Evidence to show that plaintiffs' agent knew the property on which he took a mortgage was homestead, thus charging plaintiffs with notice, should not be excluded on the ground that the principal is not chargeable with the knowledge of the agent, where the agent is attempting to defraud him, where the evidence does not necessarily imply such fraud on the part of the agent.

**2. Charge of Court—Issue Must Be Raised by Pleading.**

The question whether the agent of a lender of money intended to defraud his principal in having the real borrower convey his homestead to a third person, to whom the loan purports to be made, and by whom a mortgage is given back in order to avoid the statute prohibiting the mortgaging of homesteads, should not be submitted to the jury in an action to foreclose the mortgage, where such question is not raised by the pleadings.

**3. Same—No Charge, if No Issue in Fact.**

An instruction on a point about which there is no contention is properly refused.

ERROR from Dallas. Tried below before Hon. EDWARD GRAY.

*Harris, Etheridge & Knight,* for plaintiffs in error.—Although the deed from the defendants in error to Rogers may have been without consideration and pretended, yet Armstrong, by the loan of his money upon the appearances of genuineness, acquired a valid lien by virtue of the deed of trust from Rogers to Hayes, unless Armstrong is to be charged with

notice of the fact that said deed from defendants in error to Rogers was wholly without consideration and pretended. Heidenheimer v. Stewart, 65 Texas, 323; Hurt v. Cooper, 63 Texas, 362. There was neither pretense nor suggestion that Armstrong had any actual knowledge or notice of that fact, but it was contended that Hayes knew that fact, and that therefore the law imputed a notice of that fact to Armstrong. We understand the law to presume that Hayes would communicate to his principal, Armstrong, a knowledge of all the facts he acquired in the transaction; but where, as in this case, the evidence discloses such conduct on the part of the agent as makes it certain that he would not communicate to his principal a knowledge of such facts as he acquired, then the reason of the rule ceases, and likewise the presumption ceases with it. Hayes was by profession a lawyer. He must have known that a conveyance by defendants in error of their homestead to Rogers, wholly without consideration, and for the sole purpose of enabling Rogers to make a deed of trust upon the property for the purpose of acquiring money for the defendants in error, was an evasion of the Constitution and law prohibiting mortgaging the homestead, and that the apparently valid security was no security; and it follows that Hayes must have know that had he communicated such facts to Armstrong, his principal, Armstrong would have declined to loan the money; and it is respectfully submitted that the reason of the rule ceased in this case, and likewise the rule itself, and that Armstrong is to be held an innocent purchaser, unaffected by any knowledge that Hayes may have acquired in his acquiescence in or co-operation with Rogers and the defendants in error in the consummation. Life Assn. v. Parham, 80 Texas, 526; Mfg. Co. v. Ganzer, 63 Fed. Rep., 647; Ins. Co. v. Minch, 53 N. Y., 144; Mech. on Agency, sec. 723, and cases cited in note 2; Cunningham v. Holcomb, 21 S. W. Rep., 125; Webb on Rec. of Title, sec. 243.

*Henry & Crawford,* for defendants in error.—1. The principal is charged in law with notice of every fact known to his agent in the consummation of any transaction in which the principal has commissioned the agent to act. Taylor v. Evans, 29 S. W. Rep., 172; Smith v. Bank, 71 Texas, 457; Kaufman v. Robey, 60 Texas, 308; Railway v. Whitmore, 58 Texas, 276; Webb on Rec. of Title, secs. 241-243.

2. There was no pleading filed by plaintiffs in error setting up such facts or raising an issue of fraud. Life Assn. v. Parham, 80 Texas, 526; Abram v. Railway, 83 Texas, 61; Willis v. Hudson, 63 Texas, 678; Blair v. Finlay, 75 Texas, 210.

3. It is only where the agent is guilty of fraud and actual intentional wrong towards his principal in a transaction in which he is engaged for such principal, by means of which intentional wrong the agent profits himself or some other person to the detriment of his principal, that the rule is relaxed charging the principal in law with notice of all facts coming to the knowledge of the agent in the transaction, and mere negligence to inquire, or ignorance of the law, on the part of the agent, will not

suffice to relieve the principal from notice of all facts called to the attention of the agent. 1 Am. and Eng. Encyc. of Law, 2 ed., 1144-1148; Allen v. Railway, 150 Mass., 206; Smith v. Mosely, 74 Texas, 631.

FINLEY, ASSOCIATE JUSTICE.—This is a suit instituted by Mary A. Stephenson, joined by her husband, C. B. Stephenson, against John H. Yeargan and his wife, Mattie V. Yeargan. A recovery is sought upon a note for $800, and a foreclosure of a lien upon two different lots situated in the city of Dallas, arising out of deeds of trust given to secure the payment of the note.

It is alleged that the note was executed for a valuable consideration by William Rogers to Samuel Armstrong, on April 2, 1887, and on the same day a deed of trust was executed by said Rogers and wife to one J. M. Hays, as trustee, to secure said note, upon a lot in the city of Dallas, described in paragraph 2 of plaintiff's petition. It is alleged that on October 20, 1887, Rogers and wife, by general warranty deed, conveyed this lot to John H. Yeargan and his wife, Mattie V. Yeargan, the deed reciting a consideration paid of $2000. That in truth and fact there was no consideration in money, but the true consideration was the agreement by John H. Yeargan to pay the $800. That on March 31, 1892, John H. Yeargan promised in writing to pay said note, and its payment was by agreement extended one year from said last named date. Certain payments are alleged to have been made, and that on April 2, 1893, John H. Yeargan indorsed on the note his obligation to pay it and comply with all its conditions one year thereafter, to wit, April 2, 1894.

It is further charged, that on March 31, 1892, in consideration of the extension of the payment of the note for a year, John H. Yeargan and his wife executed a deed of trust to C. B. Stephenson, trustee, to better secure the payment of said note, upon another lot in the city of Dallas, described in paragraph 7 of the petition. It is alleged that Samuel Armstrong, the payee in the note, died on January 17, 1890, and that Mary A. Stephenson is his sole surviving heir and is the owner and holder of the note.

The answer of the defendants in error, with reference to the lot of ground described in the second paragraph of the petition, asserted that the same was, long prior to April 2, 1887, their homestead, and that they resided thereupon, and that this fact was known to Armstrong and his agents, and that on or about March 15, 1887, the defendant in error, John H. Yeargan, applied to Samuel Armstrong for a loan of $800 upon the said tract of land, at the same time advising Armstrong and his agents that the tract of land was occupied and used by him and his family for the purpose of a home; that Armstrong and his agents agreed and consented to loan him the sum of $800, to be secured by a lien upon the said lot of ground; that Armstrong and his agents required, as a condition to the loan of said money upon the said lot of ground, that defendants in error should make a fictitious conveyance thereof to some person, who

·should pretend to hold the same in his own right, and who should appear of record to have the legal title thereto, and that upon the making of such pretended conveyance, the grantee therein should make a deed of trust upon the said land for the purpose of securing said loan, and that in pursuance of such requirements of Armstrong and his agents, the defendants in error did, on March 16, 1887, convey said property by pretended warranty deed to William Rogers, who was their brother-in-law, but that no consideration passed for such conveyance, and that the deed was made and delivered with the express understanding, between all parties, that the same should be reconveyed by the said Rogers to the defendants in error, as soon as the loan, which was to be procured from Armstrong, had been obtained and the deed of trust should have been given on the said land, and that the transaction was so entered into solely for the purpose and with the design of evading the law prohibiting the execution of deeds of trust upon homesteads, and that the same was with the full knowledge of Armstrong and his agents. As to the lot of ground described in the seventh paragraph of the petition, no homestead claim was asserted.

The trial of the case resulted in verdict and judgment in favor of plaintiffs for the amount sued for by them, with foreclosure of their mortgage lien upon the lot last given as security, and described in paragraph 7 of the petition, and against plaintiffs and in favor of defendants as to the foreclosure of the mortgage lien upon the lot claimed by defendants as their homestead, and which is described in paragraph 2 of plaintiffs' petition. From this judgment plaintiffs have appealed.

The proof was in substance as follows: Before and up to March 16, 1887, the lot of ground described in the second paragraph of the petition constituted the homestead of the defendants in error, and on the date last named, the defendants in error, by general warranty deed, reciting a consideration of $1800, conveyed the same to William Rogers. Said deed was duly acknowledged on March 17, 1887, and was filed for record April 5, 1887. Thereafter, on April 2, 1887, William Rogers and wife, for the purpose of securing the note sued upon, conveyed said lot of ground, described in the second paragraph of the petition, to J. M. Hayes, trustee. Said deed of trust was duly acknowledged on April 4, 1887, and was filed for record on the following day.

On March 31, 1892, the defendant in error, John H. Yeargan, in writing, promised to pay the said $800 note, and it was agreed that the same should be extended one year from that date.

On March 31, 1892, defendants in error, the better to secure the payment of the said note, which defendant in error John H. Yeargan had assumed to pay, did, by their deed of trust of that date, convey unto C. B. Stephenson, trustee, the lot of ground described in the seventh paragraph of the petition. Said deed of trust was duly acknowledged on April 2, 1892, and was filed for record April 6, 1892. Samuel Armstrong, the payee named in the note sued upon, was the father of the plaintiff in error, Mary A. Stephenson, and he died in January, 1890, leaving plaintiff

in error, Mary A. Stephenson, his sole surviving heir at law, and as such she came into possession of the note sued upon.

The note sued upon was put in evidence, and the same, and the indorsements thereupon, in all things corresponded with the allegations of the petition with reference thereto.

The deed from the defendants in error to William Rogers, of date March 16, 1887, conveying the lot of ground described in the second paragraph of the petition, was put in evidence.

The deed of trust from William Rogers and wife to J. M. Hayes, trustee, of date April 2, 1887, conveying the lot of ground described in the second paragraph of the petition, to secure the said $800 note made by Rogers to Armstrong, was put in evidence.

The deed of trust from the defendants in error to C. B. Stephenson, trustee, of date March 31, 1892, conveying to the said trustee the lot of ground described in the seventh paragraph of the petition the better to secure the payment of the said $800 note, was put in evidence. It was proved that Armstrong, the payee named in the note sued upon, was the father of the plaintiff in error, Mary A. Stephenson; that he died in January, 1890, leaving the said plaintiff in error, Mary A. Stephenson, as his sole surviving heir at law, and that, as such, she came into the possession of the note sued upon.

As to whether the transaction was a scheme to evade the homestead law, and as to whether Hayes knew it, there is a conflict in the evidence, but there is no evidence that Armstrong knew it. The defendant in error, John H. Yeargan, testified that he approached Hayes for a loan, and stated to him that he had nothing to give as security, except his homestead; that Hayes said that he could not well secure the loan upon the homestead, and that he then asked Hayes if he could transfer the property to some friend, and let that friend make a deed of trust for the amount of money he desired; that on the next day Hayes told him that he could get the money on the home place; that he had promise from Samuel Armstrong to make the loan, and that he asked him then if it would be necessary for him to convey the home place and move out, and that he then told Hayes to proceed to get up the necessary papers; that no consideration whatever passed between himself and Rogers for the making and delivery of the said deed from himself and wife to Rogers; that Rogers was his brother-in-law, and that Rogers deeded the property back, and that no consideration whatever passed for his deed of reconveyance, and that he alone talked of the negotiations with Hayes, and that Rogers had nothing whatever to do with it, except to call upon Hayes and execute the papers for the loan after they had been prepared.

Upon cross-examination, he stated that Rogers was present when the loan was consummated and the check made out, and that he went with Rogers to the bank and got the money; that Rogers conveyed the property back to him in 1887; that he did not know when this deed of reconveyance was recorded, but that it was withheld from the record until

June 1, 1896; that he had the deed in his possession, lying away with his papers.

William Rogers, a witness for the defendants in error, testified that he never approached Hayes to borrow money upon the property in controversy; that no consideration passed between himself and the defendants in error for the making and delivery of the deed of himself and wife to Yeargan, and that he never paid anything to Yeargan and wife for the execution and delivery of their deed to him.

Rogers further testified, that he went with Yeargan to see Hayes, after the papers were all ready to be signed up, to consummate the loan, and that this was the first time he remembered of going to see Hayes about the matter, and that Hayes gave him a check for the money, and that he turned it over to Yeargan.

Mattie V. Yeargan, one of the defendants in error, testified that there was no consideration for the deed from herself and husband to William Rogers. She further testified, that in 1887 she was living on the Cedar Springs road, in North Dallas, and that she had lived at the same place ever since her marriage, and that it was the property in controversy, and that she had never resided elsewhere since her marriage, and that she had never received any benefit from the loan that she was aware of.

J. M. Hayes, a witness for the plaintiffs in error, testified that he was a lawyer by profession, that he wrote the note sued upon in this case, and that he also drew the deed of trust from William Rogers and wife to himself, as trustee, and that when he examined the title he had before him the deed from the defendants in error to William Rogers, and that the $800 was paid by him by check on the 7th or 8th of April, 1887; that this money was paid to William Rogers; that the loan was made to Rogers for Rogers' benefit, and that it was never understood by him to be for the benefit of anyone else. That he knew the property embraced in the deed of trust to himself, as trustee, had been the homestead of the defendants in error, but that the deed then before him showed that they had conveyed the same to Rogers; that said deed was before him at the time of the negotiations for the loan, and that it recited a consideration of $1800, and that he did not know what was the true consideration for such deed, other than the recital therein. He did not know that the deed from the defendants in error to Rogers had been made without consideration, nor did he know that such deed had been made to enable Rogers to borrow money and evade the homestead law, nor did he know that it was contemplated that Rogers should reconvey this property to the defendants in error until after he saw the deed of reconveyance, and he saw the deed of reconveyance only after it was recorded (which was on June 1, 1896), and that was the first intimation he had had that the property belonged to anyone other than Rogers. That in the matter of negotiating the loan he was acting for Rogers and Armstrong. That he did not tell Armstrong that the place the money was wanted on was the homestead of the defendants in error, and that if he had known anything of the kind he would not have gone to see Armstrong about getting

money; and that to the best of his recollection he did negotiate with Rogers concerning this loan before the deed of trust and the note were prepared, and that when Yeargan spoke to him about the loan he did not say that he wanted the loan on his own behalf, but that he wanted it for Rogers.

George C. Cole, a witness for the defendants in error, testified that he prepared the deed from the defendants in error to Rogers, upon the request of Yeargan, who paid him therefor, and that he was officing with Judge Hayes at the time, but did not know whether Judge Hayes was present when said deed was drawn, or that he knew anything about it; that he was present when the loan was closed, and that Rogers, Yeargan, and Judge Hayes and himself were all present.

The deed from Rogers and wife, reconveying the said lot of ground to defendant in error, bore date of October 20, 1887, and was acknowledged on the same day, but was not filed for record until June 1, 1896. There was no evidence that Samuel Armstrong himself had any knowledge whatever that the transaction was other than what it purported to be, that is, real and genuine, except as the law may have imputed notice to him because of any knowledge Hayes may have acquired upon that subject.

From this evidence we deduce the following conclusions, which we think the jury were authorized to reach: (1) J. M. Hayes acted as the agent of Samuel Armstrong in making the loan of the money; (2) at the time the loan was made, the lot in question was the homestead of John H. Yeargan and wife; (3) Hayes knew that the lot was the homestead of Yeargan and wife at the time he effected the loan; (4) the conveyance from Yeargan and wife to William Rogers was without consideration and made solely for the purpose of securing the loan upon the homestead, and was not intended to convey title out of Yeargan and wife, and this fact was known to the agent Hayes; (5) the action of Rogers and wife in executing a deed of trust upon the lot to Hayes, trustee, to secure the $800 note, was solely for the benefit of Yeargan, and this was known to Hayes; (6) it was not shown that Armstrong had any actual knowledge that the lot was the homestead of Yeargan and wife; (7) it was not pleaded by plaintiffs that the agent Hayes and the defendants conspired together to defraud the principal, Armstrong, and the evidence does not necessarily show that Hayes' purpose was to defraud his principal.

Under the first, third, and sixth assignments of error the following proposition is made: If Hayes, purporting to act as the agent of Armstrong in making a loan of money for him, concocted, connived at, or acquiesced in a scheme entered into on the part of the defendants in error and Rogers, or either of them, the design of which was to procure from Armstrong money upon what purported to be a genuine and valid security, but which, in fact, afforded no security whatever, then said Hayes ceased to be the agent of Armstrong, and became the agent of Rogers and of the defendants in error, and the law will not impute to Armstrong notice of the knowledge of the facts so acquired by Hayes; and the court

below erred in admitting testimony to the effect that Hayes did concoct, connive at, and acquiesce in such a scheme, and it also erred in refusing the special charges submitting this feature of the case to the jury, and in wholly ignoring this phase of the case in its general charge.

The evidence went to show notice in the agent Hayes that the property was the homestead of Yeargan, and that his conveyance to Rogers was merely colorable. It did not necessarily imply that the agent, Hayes, had entered into a scheme to defraud his principal, in the interest of himself or Yeargan. The evidence was admissible. 80 Texas, 526; 60 Texas, 308; 58 Texas, 276.

The court did not err in refusing to submit to the determination of the jury the issue whether the agent intended to defraud his principal in the matter, for the reason that no such issue was made by the pleadings. Defendants' allegations in relation to his homestead claim fully set out his claim that the conveyance to Rogers was colorable only, and that the agent knew the fact. If the plaintiffs intended to avoid the force and effect of the agent's knowledge by showing that his acts were intended to defraud the principal, they should have raised the issue by proper pleading. 80 Texas, 526; 83 Texas, 61; 63 Texas, 678; 75 Texas, 210.

The second and ninth assignments raise these points: (1) The refusal of this special charge: "Before you can find against plaintiffs' claim of lien you must find, first, that the deed from Yeargan and wife to Rogers was without consideration and colorable; second, that J. M. Hayes before and at the time of the loan knew that said deed was without consideration and colorable; and third, that Samuel Armstrong was chargeable with notice of the same by reason of the knowledge of Hayes thereof, if Hayes had such knowledge."

2. In giving this paragraph in the general charge: "The burden of proof is upon the defendants to show that the land described in said trust deed of April 2, 1887, was their homestead at the time of the loan, and that plaintiffs' agent had notice to that effect when the loan was made."

The evidence was conclusive that the conveyance from Yeargan and wife was without consideration and merely colorable. The only issue upon which there was a conflict in the evidence was, whether the agent, Hayes, knew that the conveyance to Rogers was without consideration, and intended only for the purpose of effecting the loan, and not in fact transferring the title.

The charge of the court in so far as the question of foreclosure is concerned, is as follows:

"As to the claim of plaintiffs for foreclosure of lien upon the land described in trust deed dated April 2, 1887, made by William Rogers and wife to J. M. Hayes, trustee, you are charged that you will find foreclosure of lien in favor of plaintiffs thereon, unless you find and believe from the evidence that at the time said loan was made, on April 2, 1887, the property described in said trust deed was then the property and homestead of the defendants, John H. Yeargan and wife, and that such fact was then known to the agent of Samuel Armstrong, who loaned the

money, in which latter event, if you find the facts so to be, you will find for defendant on plaintiffs' claim for foreclosure on the land.

"You are further instructed, that the agent of Samuel Armstrong at the time of the making of said loan had the right to consider the deed from John H. Yeargan and wife to William Rogers as conveying the title to said Rogers; and if you find that said agent did not know that the property was still the homestead and property of John H. Yeargan and wife, at the time the loan was made, then and in such event you will find for plaintiffs a foreclosure of lien upon the land described in the deed of trust of date April 2, 1887.

"The burden of proof is upon the defendants to show that the land described in said trust deed of April 2, 1887, was their homestead at the time of the loan, and that plaintiffs' agent had notice of that fact when the loan was made."

It is claimed that the charge of the court placed the burden of proof upon the plaintiffs on the question of the knowledge of Hayes. We do not think this construction of the charge can be sustained. We are of the opinion that the issue was fairly submitted and the burden of proof properly placed upon the defendants. This disposes of the fourth assignment of error also, as it is upon the same point.

The fifth assignment complains at the refusal of this special charge: "You are instructed, at the instance of plaintiffs, that Samuel Armstrong and J. M. Hayes, after the deed from Yeargan and wife to William Rogers, had the right to presume that the possession of Yeargan and wife was in subordination to their recorded deed to the said Rogers."

There was no occasion for the giving of such a charge. There was no contention upon the trial that defendants' occupancy of the premises visited notice of its homestead character upon Armstrong or his agent, and there was therefore no reason to instruct the jury upon that point. The issue tried was the actual knowledge of the agent.

The seventh and eighth assignments involve only questions which have been considered under other assignments, and are not sustained. The only remaining assignment presented attacks the verdict as being without evidence to support it, in that there is no proof to show that Armstrong or his agent, Hayes, knew that the deed from Yeargan and wife was without consideration and merely simulated.

We quote the following from the testimony of John H. Yeargan: "I told Judge Hayes that I had nothing but my home. I think he said he could not well secure the loan on the homestead. I then asked him if I could transfer my property to some friend and let that friend make a deed of trust for the amount of money that I called for. To the best of my recollection the suggestion about transferring my homestead to a friend came from me. Judge Hayes said he would give me an answer. I went back to him the next day; he told me he could get the money on this place. I asked him then if it would become necessary for me to convey my home place and move out, instead of renting the place and move out. When I went back to see Judge Hayes on the next day, he

told me that he had seen Mr. Armstrong, and had got promises to lend the money."

The assignment is not sustained by the record.

We find no error in the judgment, and it is therefore affirmed.

*Affirmed.*

Writ of error refused.