Opinion delivered May 4, 1888.

| 70 | 623 |
| 79 | 113 |

No. 5711.

## THE GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* LEMUEL SILLIPHANT.

1. NEGLIGENCE.—When, by the use of ordinary care, in testing the strength of machinery or implements, placed in the hands of an employe of a railway company, with which to labor, its weakness and dangerous character for the work to be done could have been ascertained, and injury results to such employe from such defect, the company will be

chargeable with notice of the defect and consequent liability in dam-
ages for the injury.

2. CHARGE OF COURT.—A charge of the court upon an abstract proposition
of law, which, though correct in itself, is not applicable to the facts in
evidence before the jury, can only tend to mislead, and is error.

3. EMPLOYER AND EMPLOYE.—An employe, though presumed to take the
natural risk incident to the employment, does not assume that risk
which arises from the negligence of the employer.

4. SAME—NEGLIGENCE—CHARGE OF COURT.—See charge of court appli-
cable to the duties and liabilities of employer and employe in furnishing
and using machinery incident to the employment, *held* correct.

5. DAMAGES—CHARGE OF COURT.—When the basis for damages alleged in
a petition as a result of defendant's negligence "is great suffering, per-
manent ill health and physical weakness" of the plaintiff, a charge
which includes "physical and mental disability or weakness occasioned
by the injuries" as matters on which a verdict for damages may be
based, is not error.

6. VERDICT—DAMAGES.—See statement of case for facts under which *held*
that a verdict for ten thousand dollars damages for injuries caused by
the negligence of a railway company, is not so great as to evince that
prejudice on the part of the jury which would require it to be set
aside.

APPEAL from Dallas. Tried below before the Hon. George
N. Aldridge.

The appellee sued appellant for damages resulting from neg-
ligence, the character of which is stated in the opinion.

Appellee's family consisted of himself and two children. Be-
fore his injury he was an active and strong man, enjoying
health, twenty-two years of age. He was a butcher by trade,
and earned in that business seventy-five dollars per month.
He sought employment on the railroad, and was so engaged as
a section hand when the injury occurred, in November, 1882.
He fell in front of a rapidly moving hand car, which rolled
upon him, doubled him up and crushed him. He was rendered
insensible and unable to move. He was carried home by four
men lifting him in a wagon upon a mattress. There was evi-
dence that for a long time he could not stand to be touched, on
account of the pain; that he could not hold his urine, and his
bowels could only be moved by the use of a syringe; that for
six months he lay helpless upon his bed. For two years he was
unable to do any kind of work. After he began to get about
he stepped on the side of his foot and wrenched his back so
that he was rendered helpless again, and suffered agonies. His
mind became affected from the injuries, so that figures or cal-

culations of all kinds confused him, and his memory became impaired. An indentation was left in his back bone where the injury occurred. One of his bones was either driven in or taken up by absorption. At the time of the trial, three years after his injury, he still walked with a stick. He could only stand a short while in his butcher shop, and then had to call his wife to work while he laid down to ease his suffering in his back. There was evidence that he could not, at the time of his trial, pick up anything without getting upon his knees; that his back was stiff and pained him; that he could not put his shirt on; that he was unable to lift over twenty pounds; that his only way of earning a livelihood, and the only money he had earned since his injury, was the money he was then earning by keeping the butcher shop in east Dallas for Mr. Harris, at seven dollars per week. Mr. Harris put the market there in order to give him employment. He could not lift the meat; others did this for him. His wife stood in the store and waited on his customers when he could stand no longer.

All of the medical experts agreed that the plaintiff had been severely injured. All of them admitted that any serious injury to the spine was dangerous, and if it affected his spinal cord, would probably prove fatal, in from five to fifteen years. A witness, Doctor Peterson, who had made an examination of him, stated that he thought the injury permanent and serious.

On cross examination of Harris (who was plaintiff's witness), he stated: "It is really for the benefit of Mr. Silliphant that I keep the market up there." Plaintiff then asked the witness Harris as to his purpose in establishing a meat market in east Dallas, to which he replied that his object was for the purpose of giving employment to plaintiff, who needed it." The question and answer were allowed over appellant's objection.

After the plaintiff had been disabled for two years he worked for Harris for seven dollars and fifty cents per week. Before his injury Harris had given him seventy-five dollars a month; was a butcher by trade. A number of witnesses testified to plaintiff's inability to do any work requiring health and strength. Verdict for plaintiff for ten thousand dollars damages.

*Seth Shepard* and *Ballinger, Mott & Terry,* for appellant: Where the servant has equal means or opportunity with the master of knowing or discovering a defect in machinery, which

the servant's duty requires him to use, then the servant is as much bound to take notice of such defect as is the master, and in such case the failure of the servant to discover such defect, and to avoid the consequences of it, is contributory negligence. (Houston & Texas Central Railway v. Conrad, 52 Texas, 627; McGlynn v. Brodie, 31 Cal., 376; Milnor v. N. Y. & N. H. Ry. Co., 5 Am. Ry. Rep., 380.)

The issue was as to whether pine, the material used, was such as railroad men of ordinary prudence would use for hand car handles. This was the limit of appellant's duty. It was not required to use the best material, and the evidence as to what was the best material was irrelevant and tended to mislead the jury. This error was intensified by the refusal of the court to give charge number nine, requested by appellant. (Woods's Master and Servant, secs. 331–333; McGinnis v. Bridge Co., 8 Am. and Eng. Ry. Cases, 135, and note Ib., 94–141; Gravelle v. Railway, 10 Fed. Rep., 711; Railway v. Duffy, 4 Am. and Eng. Ry. Cases, 638; note to Ballou v. Railway, 5 Id., 504.)

The burden of proof is on the plaintiff to show negligence. Proof that the injury was caused by a defect in machinery is not alone sufficient evidence of negligence; but the plaintiff must go further and show that the defendant failed to use ordinary diligence in its selection or in keeping it in proper repair.

Where injury occurs through a latent defect in machinery which could not have been discovered by such examination as is usually made by men of ordinary care and prudence, the master is not liable. (Missouri Pacific Railway Company v. Lyde, 57 Texas, 505; Darkin v. Sharp, 8 Am. and Eng. Railroad Cases, 520; Id., 141; Ballow v. C., etc., R'y, 5 Id., 480.)

The court in its own charge having failed to clearly instruct the jury that the limit of appellant's duty was to use ordinary care and diligence in providing safe machinery, should have given the second special charge requested by appellant.

Second special charge refused: A railroad company is not an insurer of the safety of its employes or of the machinery with which they work; but it is only required by the law to use ordinary care and diligence in providing its employes with safe and suitable machinery and implements, and in keeping such machinery and implements in repair, and by ordinary care and diligence is meant such care and diligence as men of ordinary prudence and caution exercise in the transaction of their own affairs, and the railroad company is bound to no higher degree

of diligence.   The court charged:  "It is the duty of a railway company to furnish to its employes machinery reasonably safe for the purposes for which it is to be used; it is also the duty of a railway company, after having provided such machinery, to use reasonable diligence to see that such machinery is kept in such reasonable safe condition.   If the railway company fails in either of these respects  *  *  *   then the company is guilty of negligence.   A railway company is not bound to furnish absolutely safe machinery, nor to absolutely keep it in safe condition; but simply to use the diligence above described in providing it and seeing that it is kept in such safe condition.   (Gates v. S. M. R. R., 2 Am. and Eng. Railroad Cases, 237; L. R., etc., R'y v. Duffus, 4 Id., 637; Cooley on Torts, sec. 557.)

The court erred in failing to charge the jury that the burden of proof was on the plaintiff to show by a preponderance of the evidence that the defendant was negligent either in furnishing improper machinery or in failing to keep the same in proper repair, and erred in refusing to give the third special charge requested by defendant, because the same states the correct rule of law as to the burden of proof.   (Woods on Master and Servant, sec. 346 et seq., 368, 442, 408, 414, 412, 411; DeGraff v. N. Y. C. & H. C. R. R., 76 N. Y., 125; Ballow, admx., v. Chi. & N. W. R. R., 5 Am. & Eng. Railroad Cases, 408; Little Rock & Fort Smith R. R. v. Duffy, 4 Id., 638; Summersall v. Fish, 117 Mass., 312; Sherman v. The Western Transportation Company, 62 Barb., 150, 158; Thompson on Neg., 1053, 1055, 993.)

The court erred in charging the jury that plaintiff could recover for mental disability or weakness, and that they could allow compensation for the pain and mental anguish plaintiff may have suffered, because there are no allegations in plaintiff's petition of mental disability or weakness, or pain and mental anguish.

*Dye & Robertson*, for appellee:  The company is chargeable with knowledge which it might have acquired by the exercise of due care the same as if it already possessed it; whereas the servant has the right to assume that all necessary examinations have been made by the master, and is not required to examine the machinery as to fitness and sufficiency.   (H. & T. C. R'y Co. v. McNamara, 59 Texas, 258, 259; Railroad Company v. Doyle, 49 Texas, 190; Howard Oil Company v. Former, 56 Texas, 301; Railway Company v. Gorbeth, 49 Texas, 575.)

It was pertinent and proper to show by the witness, Harris, the circumstances under which he gave the plaintiff employment, with a view to showing that he was not in fact receiving wages of a permanent character based upon his ability to earn them, but that such wages were in reality but a precarious charity based upon the friendship or kindly sympathy of his employer.

The verdict of the jury is not excessive, but amply sustained by the proof. (Railroad v. Rondell, 50 Texas, 260; 62 Texas, 135, 183, 256, 346, 368; 58 Texas, 42; 50 Texas, 260; 60 Texas, 606; 46 Texas, 273.)

Walker, Associate Justice.　Silliphant sued and obtained judgment against appellant for damages suffered by him when working a hand car as an employe of appellant.

The plaintiff's case is, that the direct cause of the injury was the breaking or giving way of the lever, at one end of which he was working, aiding in propelling a hand car from a section house to the place of labor, of the squad of which he was a member. He had worked several months on another railroad, and knew the manner of working a hand car. On the morning of his second day's work for defendant he was ordered to work at the lever in the hand car, his position being indicated by the boss—on the outside, with his back toward the direction the car was moving—a position not unusual with eight or ten men in the car, as there were at the time. The work required the use of strength upon the lever in its upward and downward motion. After the party had gone some distance, and while the car was in motion, and when plaintiff was rising, the lever gave way, breaking in the socket; from the sudden break in the resistence the momentum of his body threw him backward. The car ran upon him. The fall and the pressure of the car upon him caused serious injury to his spine.

The broken lever was of pine timber. It broke in the socket through which it passed. It had been fastened in place by a nail or iron bolt through it; at the break, which was at the place penetrated by the nail or bolt, the wood was discolored, showing decay and evidence of a partial old break. Outside the socket there was no evidence of a defect. There was testimony that oak and hickory was the best quality of wood, but that pine was in common use and had sufficient strength for the purpose of safety. The foreman in charge of the machinery

testified that the car was new and had been in use from the middle of August (the accident was on November 20); that he was accustomed to examine the cars, and had done so, and that "there was no defect whatever in the handle of the car." He also said he had the other piece of the broken lever at home and would produce it, but he did not. The boss in charge of the car said "the handle looked to be good and it had not been regarded unsafe."

In this conflict in the testimony, this court will not disturb the verdict. It would seem that, by the use of ordinary care in testing the condition of this lever, its weakness might have been ascertained by the superintendent. If so, the defendant would be chargeable with such knowledge, and consequent liability would follow an injury from the defect. (49 Texas, 181, Railroad Company v. Dunham; 59 Texas, 256, Railroad Company v. McNamara.)

Naturally a lever made of any kind of wood, with time, use and exposure will wear out or become unsafe. Experience in using such instruments should indicate something of the probable effects of use, exposure and time, or a combination of them, upon their strength, and when they would likely become unsafe. A newly employed hand, as was the plaintiff, would not be likely to know anything of the condition of machinery furnished for his use, as to safety, beyond what was visible to the eye. Here the break was out of sight. In performing the duty of inspection, for the purpose of keeping proper machinery reasonably safe for the employes, it would devolve upon him to make use of his experience and to take note of whatever facts he knows, or might reasonable know, leading to knowledge of the true condition of the machinery. In short, his tests and oversight must be real. Taking the circumstances into view, the superintendent had much greater facilities for knowing the strength or want of it in the machinery than the plaintiff, who was not shown to have ever seen the lever before he was put to work it the morning of the accident. It was therefore not error in the court to refuse the charge that, if the opportunities of the plaintiff and of the defendant were equal to ascertain the defect, plaintiff could not recover. It was not applicable to the testimony.

The defendant asked the charge, "That a person taking employment is presumed to have requisite skill and knowledge for the employment, and to assume the ordinary dangers of the

employment." The rule is, the employes are presumed to take the natural risks incident to their work, not those arising from the negligence of the employer. (Pierce on Railroads, 371; Wharton on Neg., 211.)

Complaint is made against the charge as to its declaration of the degree of care required of the defendant in providing suitable machinery, as to latent defect in machinery, as to the burden of proving negligence, etc. The charge in part is set out here, and we think it a sufficiently clear statement of the law applicable to the facts:

"You are instructed that it is the duty of a railway company to furnish to its employes machinery reasonably safe for the purposes for which it is to be used. It is also the duty of a railway company, after having provided such machinery, to use reasonable diligence to see that said machinery is kept in reasonably safe condition. If the railway company fails in either of these respects, and injury is thereby occasioned to one of its employes, then the company is guilty of negligence. A railway company is not bound to furnish absolutely safe machinery nor to absolutely keep it in a safe condition, but simply to use the diligence above described in providing it, and seeing that it is kept in such safe condition. If you find that the handle of said car was made of inferior wood, and such as was unfit and not reasonably safe for the purposes of a handle to said car, or if said handle, though originally reasonably safe and suitable for the purposes of operating said car, had become rotten or out of repair, and if the defendants knew of said defects, or by the use of reasonable diligence could have discovered said defects, then to furnish a car with such a handle would be negligence on the part of the railway company. An employe of a railway company is required to use reasonable care and caution to prevent an injury to himself in operating the machinery furnished to him by the company, and if he failed to do this he would be guilty of negligence. If an employe of a railway company knows that machinery furnished him is defective and unsafe, and if, having such knowledge, he nevertheless undertakes to use it, and while so using it an injury is occasioned to him by said defect, then, under such circumstances, he would be guilty of negligence. If said handle was defective and unsafe, and if plaintiff knew of such defective and unsafe condition before the handle broke, or if, in operating said car, plaintiff voluntarily took a position upon said car which was

dangerous, and which did contribute to bring about the injuries complained of, then, in either event, plaintiff would be guilty of contributory negligence.

"If said handle was reasonably safe and suitable when the car was furnished to plaintiff, then defendant was not guilty of negligence in furnishing it. If said handle was defective as to material, rotten, or out of repair when so furnished, if its defects were unknown to defendant, and if defendant could not, by the use of reasonable diligence, have discovered its said defects, then, in such case, defendant would not be guilty of negligence in furnishing car with such a handle. · If said handle was so defective, and if plaintiff did not know of the defects in it, and if he did not voluntarily take a dangerous position on said car, then he would not be guilty of contributory negligence.

"If you find, under the above instructions, that plaintiff and defendant were both guilty of negligence, which contributed to bring about the accident to plaintiff, then plaintiff can not recover herein and you will find for defendant. If you find that neither plaintiff nor defendant were guilty of such negligence, then you will also find for defendant.

"To find for plaintiff you must believe from the evidence that defendant was guilty of negligence which caused the injuries to plaintiff, and in addition, that plaintiff, on his part, was not guilty of any negligence which contributed to bring about the accident to himself."

The testimony of Harris that "he started his market in east Dallas for the purpose of giving employment to plaintiff, who needed it." was not improperly admitted, coming as it did from matter elicited in cross examination by defendant. But as the ability of plaintiff to earn wages was an issue, that his present wages was in part charity, was competent.

As to the measure of damages complained of in the charge. The petition alleges "that the injuries caused by the defendant's negligence induced great suffering, permanent ill health, and physical weakness." The charge complained of includes "physical and mental disability or weakness occasioned by injuries." We think the terms "great suffering, permanent ill health, and physical weakness," are sufficiently comprehensive to include the matters specified in the charge.

The verdict is large, and it is claimed to be excessive. The expert medical testimony is contradictory as to the probability

of final and complete recovery by plaintiff from the effects of his injuries. That his injuries were serious, his loss of time great, and his physical pain intense and protracted, is not in dispute. The amount is not so great as to show prejudice or misconduct on part of the jury. (50 Texas, 266; 58 Texas, 42; 60 Texas, 646; 61 Texas, 484; 62 Texas, 135; 62 Texas, 368.)

The judgment below is affirmed.

*Affirmed.*