INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v.
C. B. GOURLEY.

Decided November 2, 1899.

**1. Master and Servant—Assumed Risk.**

An employe of a railway company is not presumed to take such risks as arise from the negligence of the employer.

**2. Same—Defective Machinery—Negligence of Employe.**

Where an employe knows, or by the use of ordinary diligence could discover, that machinery furnished him by the employer is defective and unsafe, and yet he undertakes to use it and is injured by reason of such defect, he is guilty of negligence.

**3. Same—Same—Negligence of Vice-Principal as Concurring Cause.**

Where a drawhead was defective, but its use by a brakeman in making couplings would not have been dangerous but for the negligence of the conductor in signaling a stop at the wrong moment, the danger in its use was not so apparent as to deprive the brakeman of the right to recover for the resultant injury.

APPEAL from Anderson. Tried below before Hon. J. GORDON RUSSELL.

*N. A. Stedman* and *Gould & Ewing*, for appellant.

*Campbell & McMeans*, for appellee.

GARRETT, Chief Justice.—This action was brought in the District Court of Anderson County by the appellee, C. B. Gourley, against the International & Great Northern Railroad Company to recover damages for injuries received while he was in the employment of the company and in the discharge of his duties as brakeman. When injured the appellee was attempting to uncouple a freight car from the tender of an engine. The latter was provided with an ordinary link and pin and a double-slot drawhead to accommodate cars of different heights, while the freight car had an automatic coupler, so that in order to uncouple the tender and car it was necessary for the appellee to go between them and draw the pin. The engine was moving slowly, and at the signal of appellee had slacked up to enable him to draw the pin, which he was attempting to do with his left hand, holding a lantern in his right hand, it being night-time, when the conductor signaled the engineer to stop. The engine was suddenly stopped and the car ran up against the tender, bringing the drawheads suddenly together, and catching the appellee's hand, mashed it. The car was coupled to the tender in the lower slot of its drawhead, which brought the top of the coupling pin just below the top of the drawhead.

It appeared from the evidence that the slot in the drawhead of the tender in which the coupling was made was worn, and that the drawhead itself was out of plumb and hung over or down, instead of projecting vertically from its connection with the tender; and it was claimed by the appellee that on account of this condition of the drawhead his hand was caught when the two drawheads came together; that the leaning condition of the drawhead brought it down against the pin, thus crushing the hand with which he was attempting to draw the pin. We conclude in support of the verdict, which is fully sustained by the evidence, that the drawhead of the tender was in a defective condition by reason of its being worn and hanging down as above described, and that the appellee was injured by reason of the defective condition of the drawhead in hanging down and the sudden stopping of the engine; that the conductor knew that the appellee was in the act of uncoupling the car, and improperly and negligently gave the signal to stop; and that the appellant through its servants and agents knew of the defective condition of the drawhead and had not exercised due care in providing one that was safe. The appellee did not know of the defective condition of the drawhead, and acted in a prudent manner in his attempt to remove the coupling pin, and was without fault on his part.

There was no error in the judgment of the court below. The verdict of the jury is fully supported by the evidence that the injuries resulted from the negligence of the appellant in failing to keep the drawhead in proper condition, and in the act of the conductor in giving the signal to

stop, and that while attempting to uncouple the cars the appellee acted with due care. Considered as a whole, the charge of the court made a proper presentation of the issues to the jury. The instruction complained of under the first assignment of error, that "employes of railroad companies are not presumed to take those risks which arise from the negligence of the employer," taken in connection with the entire paragraph, was a proper statement of the law. In a subsequent part of the charge the jury were instructed that if an employe knows, or by the use of ordinary care can discover, that machinery furnished him by the company is defective and unsafe, but undertakes to use it and is injured by reason of such defect, he will be guilty of negligence. This instruction furnishes the limitation upon the charge complained of as contended for by the appellant.

That part of the charge set out in the second assignment of error as to the measure of the company's duty in furnishing machinery seems to have been copied from Siliphant's case (70 Texas, 630), in which it is approved. As the court had already properly instructed the jury as to the degree of care required of the company in seeing that the drawhead was kept in a safe condition, there was no error in the portion of the charge made the ground of the fourth assignment of error.

The fifth assignment of error is as follows: "The court erred in instructing the jury as follows: 'But though you may find that the drawhead was defective, and that the plaintiff at the time of the injury knew, or by the use of ordinary care could have known, of the defect, yet if the danger from said drawhead was not apparent to plaintiff, and would not have been apparent to him by the use of ordinary care, then he would not have been guilty of negligence in making an effort to uncouple said car from said engine, if he otherwise used reasonable and ordinary care and caution to prevent injury to himself in making said attempt to uncouple said car,' because if the drawhead was defective and plaintiff knew it, he assumed the risk of using it, whether the danger was apparent or not."

Appellee testified that he did not know of the defective condition of the drawhead in either of the respects mentioned. This was uncontradicted, except that one witness stated that appellee had told him that he knew that it was worn. It also appears from the undisputed evidence that the accident would not have occurred but for the act of the conductor in giving the signal to stop. If the engine had not suddenly stopped the appellee would have drawn the pin in safety, notwithstanding the defective condition of the drawhead, although such condition was a contributing cause to the injury, since on account of it the drawhead came low enough to catch the appellee's hand between it and the top of the pin. If the drawhead had been in good condition the accident would not have happened, notwithstanding the act of the conductor, because the drawhead would have been far enough from the pin not to have caught appellee's hand. The accident would not have happened but for these concurring causes. Knowledge of the defective condition of the draw-

head on the part of the appellee, when he could not anticipate that the conductor would give the stop signal, did not affect him with the assumption of any risk in using it. There was no apparent danger in using the drawhead. Danger developed only from the negligent act of the conductor which the appellee could not anticipate. We think that under the undisputed facts in the case the portion of the charge complained of was not erroneous.

The remaining assignments of error complain of the verdict in finding that the appellee was not guilty of contributory negligence in the respects mentioned. We think that the finding of the jury that the appellee exercised due care is sufficiently supported by the evidence. The judgment of the court below is affirmed.

*Affirmed.*