## CHICAGO, R. I. & P. RY. CO. v. CALLOWAY, Adm'x.

No 18712. Opinion Filed Dec. 3, 1929.

Rehearing Denied Sept. 16, 1930.

W. R. Bleakmore and John Barry, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison & Sons, for defendant in error.

HERR, C. The defendant, Chicago, Rock Island & Pacific Railway Company appeals from a judgment for $20,000 rendered against it in the district court of Garvin county in a personal injury action, its main contention being that the judgment is not supported by the evidence and is contrary to law.

It appears that John C. Calloway, a brakeman in the employ of defendant company, while engaged in uncoupling cars, was caught between the knuckles of the drawbars and killed. The accident occurred on the 26th day of August, 1924, at Limon, Colo. This action is brought by Donnie Calloway, administratrix of the estate of deceased.

The train upon which deceased was working at the time of his injury was a through freight train. This train arrived at Limon at 4:45 a. m., where it met a passenger, and, in order to permit the passenger train to pass, the freight, consisting of 32 cars, pulled in on a side track. This track was not of sufficient length to accommodate the entire freight train. On the arrival of the train, the freight crew received orders from the yardmaster to "double over." In response to this order, the freight pulled east on the said side track, which was slightly down grade, past the depot to the east end of the passing, or main track, and there stopped, and waited until the passenger train pulled by. The deceased, Calloway, then turned the switch and the freight pulled out on the main track for a short distance and stopped. The engineer, in making the stop, applied the air, causing an even stop of every car in the train. After the train came to a full stop, the engineer released the brakes throughout the train. Deceased, Calloway, then went on top of the cars and set the brakes on the eighth and ninth cars. The train, upon entering the main track, curved sharply to the left. Deceased, Calloway, was working on the engineer's side and on the outside of the curve, and, after setting the brakes, stepped out about 25 feet from the track and gave the engineer three signals at the same time, meaning to back up the train; that he, Calloway, would then uncouple the cars and that the engineer should then proceed forward.

After having received these signals, the engineer reversed the engine, backed up, bunched the cars, waited momentarily, and then proceeded forward pulling out on the main track with seven cars to a point where a switch was to be turned for the purpose of backing in and placing these cars on another side track. Calloway did not appear to line up this switch and it was then discovered that he had been killed.

It is conceded that deceased met his death by being caught and crushed between the bumpers of the two cars where the uncoupling was made. The cause of such death is the main disputed fact in the case.

Defendant contends that no negligence on its part is established by the evidence.

Plaintiff's theory is that the accident occurred by the forward movement of the engine; that the engineer moved forward without opening the throttle; that this forward movement without the opening of the throttle caused a backward movement of the live cars, or cars attached to the engine, and that in the backward movement deceased was caught between the knuckles of the drawbars and crushed.

It is further contended by plaintiff that it was negligence on the part of the engineer to move forward without giving a warning or without having received a signal from deceased to that effect, and that it was also negligence to move forward with the throttle closed; that if the engineer had opened the throttle, there would have been no backward movement, and that the accident would not have occurred.

We think the evidence fairly establishes that the accident occurred as contended by plaintiff; that is, that the backward movement of the live cars caused deceased's death; and it is also fairly established by

the evidence that the backward movement would not have occurred had the engineer opened the throttle before moving forward.

The engineer testified that he moved forward and slightly down grade with the throttle of the engine closed; that a movement such as was made in the instant case frequently caused a surging back of the live cars for a distance of several feet, and at times a sufficient distance to cause a recoupling. He further testified that from the way it felt on the engine there was a backward movement of the cars in the instant case. There is also other evidence in the record tending to sustain this conclusion.

Counsel for defendant suggest several different ways in which the accident might have occurred, but we think the evidence disproves every theory advanced by the defendant and fairly establishes that the accident did, in fact, occur as above indicated.

The question then presented is, Was it negligence on the part of the engineer to move the cars forward without a warning or without first having received a signal from deceased to that effect? and was it negligence to so move without opening the throttle? We think these questions must be answered in the affirmative.

It is conceded that the cars in question were moving in interstate commerce, and that the Federal Safety Appliance Act applies. It is undisputed by the evidence that defendant's cars were properly equipped under this act and that the appliances were in good working order at that time. In these circumstances, it is contended by defendant that no recovery can be had because deceased went between the cars and lifted the pin by hand instead of remaining on the outside and raising the pin with the pin-lifting lever; that having violated the rules of the company, as well as the Safety Appliance Act, no recovery can be had.

We cannot agree with this contention. It is undisputed that it was necessary for deceased to go between the cars to turn the angle cocks and disconnect the air hose. This the engineer knew, and in our opinion he had no right to start the train while deceased was thus in a known place of danger without a warning or without a signal to that effect from deceased. The evidence is undisputed that neither a warning nor signal was given. It is also quite definitely established by the evidence that the cars were in fact uncoupled while the train was stationary, and that deceased was not injured while in the act of uncoupling.

We do not agree with the contention that no recovery can be had for the reason that prior to the accident deceased gave the three signals as above indicated. There is ample expert evidence in record to the effect that, notwithstanding these three signals were given, the engineer could act only upon one. Therefore, when the signal to back was given, the engineer, knowing the brakeman was required to go between the cars to turn the angle cocks and disconnect the air hose, had no right to move forward until a signal to that effect was given him by the brakeman. Three expert witnesses so testified.

There is also some evidence to the contrary, it being testified to by the yardmaster that, when these three signals were given, it was the duty of the engineer to obey them, and that thereunder it was his duty to back the train, bunch the cars, wait momentarily, about 20 or 30 seconds, and then move forward without a further signal.

This conflict raised a question for the jury. We think, from this evidence, though conflicting, the jury was authorized to find that, under the rules of the company as interpreted, applied and acted upon by trainmen generally, the engineer had no right to rely and act on these three signals, but should have acted on one only, and that having acted upon the back-up signal, he had no right to move forward without warning, or having received such signal from the brakeman, and we think the jury was authorized to find negligence on the part of the engineer in starting the engine without having received such signal or without some warning, and in so moving with the throttle closed.

In arriving at this conclusion, we have not overlooked the evidence to the effect that in performing his duty of uncoupling, deceased should first have turned the angle cocks and disconnected the air hose, then stepped out from between the cars and lifted the pin with the pin-lifting lever. And while the argument advanced by counsel for defendant, to the effect that if deceased had followed this process the injury could not have occurred as it did, makes a rather strong appeal to us, still we cannot escape the conclusion that the jury was warranted in finding the engineer negligent in starting forward with the throttle of his engine closed, without a warning or without having received a signal to that effect.

In this connection, it must be borne in mind that the engineer testified that after

making the backward movement, he waited momentarily and then moved forward. We cannot say, as a matter of law, that this does not constitute negligence.

In the case of Gal. H. & S. A. Ry. Co. v. Courtney (Tex. Civ. App.) 71 S. W. 307, the court holds:

"In an action for injuries to a brakeman, sustained while uncoupling, with his hands, cars on which there were automatic uncoupling levers, evidence examined, and held that the question of contributory negligence was for the jury.

"A brakeman engaged in coupling and uncoupling cars in switching had a right to act on the presumption that the engine would not be moved without a signal."

In the body of the opinion, the court says:

"The train had stopped on the signal of plaintiff and another brakeman, Jordan, who were doing the uncoupling. The witnesses, including the engineer, testified that the engine, after it stopped, had no right to move whatever, except upon a signal from these brakemen, and Jordan and Courtney testified that neither of them gave the signal. If the engine had not moved, as it did, without a signal, it was perfectly safe and free from danger for plaintiff to make this uncoupling with his hands. * * * There was no danger whatever of his being injured by a backward movement of the train so long as the engineer observed his duty, which plaintiff had a right to assume he would do. To charge plaintiff with notice of such danger, it would have to be held that he must have anticipated the engineer's negligent act. Under the above circumstances, if no signal was given, we think the danger created by the movement of the engine was not obvious so as to make plaintiff's act an assumed risk as a matter of law; and the fact that the cars were provided with levers would make no difference in this respect. Railway Co. v. Gourley, 21 Tex. Civ. App. 579, 54 S. W. 307. Whether or not plaintiff, under all the conditions surrounding him, acted as a prudent man would have done, was a question for the jury, and the court did not err in refusing to treat his act as negligence per se."

In the case of Louisville & N. R. Co. v. Grubbs (Ky.) 49 S. W. 3, it is said:

"Where a brakeman had gone in to make a coupling, it was gross neglect for the engineer to give the train a quick, sharp motion before he was signaled to go ahead."

See, also, Grady v. Florence & C. C. Ry. (Colo.) 98 Pac. 321; Ill. C. Ry. Co. v. Jones, Adm'r (Ky.) 80 S. W. 484.

We conclude that the evidence was sufficient to take the case to the jury, and that there is ample evidence to support the verdict and judgment.

It is also contended by defendant that the court erred in admitting certain evidence over its objection, and erred in refusing certain instructions requested by it. It would make this opinion entirely too lengthy to discuss these matters in detail, and, inasmuch as no serious errors were pointed out relative thereto by counsel on the oral argument, we shall not attempt to do so. We may say, however, that we have given these matters careful consideration, and hold that the court did not err in this regard.

The judgment should be affirmed.

BENNETT, HALL, JEFFREY, and REID, Commissioners, concur. DIFFENDAFFER, Commissioner, dissents.

By the Court: It is so ordered.