## St. LOUIS-S. F. R. CO. et al. v. WILLIAMS.

No. 24752.   Jan. 21, 1936.

Rehearing Denied April 21, 1936.

E. T. Miller and Cruce & Franklin, for plaintiffs in error.

Johnson & Jones and Paul Cameron, for defendant in error.

PER CURIAM. Plaintiff commenced this action on the 5th day of February, 1932, in the superior court of Creek county, Okla., by filing his petition for damages against the St. Louis-San Francisco Railway Company, a corporation, Fred Atkins, Cotton Smith, William Tucker, Henry Ellis, and Joe Bolin. Cotton Smith and William Tucker were never served. At the trial the court sustained a demurrer to the evidence of plaintiff against Henry Ellis and Joe Bolin. The action of the court was not excepted to by plaintiff and no appeal was prosecuted therefrom. The case proceeded to trial against the defendant railway company and Fred Atkins, and resulted in a verdict for the plaintiff for $15,000 against both defendants, and judgment was rendered on the verdict. Motion for new trial was filed, overruled and excepted to, and this appeal was lodged in this court. The parties will be referred to as they appeared in the trial court.

The suit was brought by Dan Williams against the defendants for injuries alleged to have been sustained by plaintiff at Bristow, Okla., on or about the 16th day of May, 1931, at 2:45 a. m. The plaintiff claims that he was injured by defendants while he, as a police officer of the city of Bristow, was attempting to inspect merchandise railroad cars in the yards of the defendant railway company with and at the invitation of one Joe Bolin, an employee of the railway company. Plaintiff claims their purpose was to remove hoboes and trespassers from the train of the railway company, and to inspect the seals on the car

doors and see that railroad company's property was not molested or interfered with. Plaintiff claims that he and three others arrived at the railroad yards at or about the time the train came to a stop. The four got out of the automobile, it being understood among themselves that two would inspect one side of the train and the other two would inspect the other side of the train. Plaintiff attempted to cross between two freight cars, so as to get to the other side of the train, and when he reached about the center of the space between the two cars, the defendant Fred Atkins, engineer of the train, caused the cars to move back a short distance and plaintiff's foot was caught between the drawbar and buffer iron and was crushed. Plaintiff claims that the moving of the train was done without giving the customary signal of defendant's intention to move the train at the time, thereby preventing the plaintiff from having an opportunity to protect himself.

Plaintiff claims that he spent several weeks in each of two hospitals, and that he has paid and obligated himself to pay the sum of $735 for medical services, and that on account of this injury and the pain and suffering he endured, and still endures, and the loss of ability to work and the cost incident thereto, he is entitled to $20,000.

Defendants deny generally and plead contributory negligence. The evidence is undisputed that plaintiff was making his inspection of the train in question at the request of the chief special officer of the railway company, and on the order of the mayor and chief of police of Bristow, and in company with the defendant's special agent, Bolin. The railroad yards of the defendant railway company were within the city limits of Bristow. It was the duty of the plaintiff, as night policeman, to protect the property of the defendant railway company within the limits of the city of Bristow. In so doing, the defendants claim that plaintiff was doing the work of a servant of the railway company, and in case of injury he would be governed by the same rules of law as though he were an employee of the railway company.

The evidence shows that the plaintiff was not an employee of the railway company. Neither was he a trespasser nor licensee. However, the evidence does show that he was an invitee, notwithstanding the contention of the defendants. Why do we conclude that plaintiff was an invitee? An "invitee" has been defined to be "one who possesses an invitation either express or implied." Hise v. North Bend et al., 138 Ore. 150, 6 P. (2d) 30.

"One who goes upon the premises of another in a common interest or to a mutual advantage is there under the implied invitation of the owner." City of Shawnee v. Drake, 69 Okla. 209, 171 P. 727.

"Invitation is inferred where there is a common interest or mutual advantage while a license is inferred where the object is the mere pleasure or benefit of the person using it." Midland Valley R. Co. v. Littlejohn, 44 Okla. 8, 143 P. 1.

The legal duty owing to an "invitee" has been defined to be:

"While the owner, occupant or person in charge of property is not an insurer of the safety of the invitee thereon, he owes to an 'invitee' for the duty of exercising reasonable or ordinary care for his safety, and is liable for injury resulting from breach of such duty, although no element of lawlessness or wantonness enters into the act or omission complained of. The duty in this respect is an active, affirmative or positive one and is not limited to merely refraining from injurious acts, although there is also a duty to refrain from any act which may make the invitee's use of the premises dangerous or result in injury to him. So the business of the owner or occupant must be conducted with reasonable care to avoid injuring invitees." 45 C. J. 823.

"While the rule requiring reasonable care for the safety of invitees is usually announced with respect to land and buildings thereon or appurtenances thereto, it is not confined to property of this character, but applies to any property into or upon which a person may be invited, as for instance an automobile, or other vehicle, a boat, a locomotive or circus seats." 45 C. J. 825.

In this case the evidence shows that for more than two years prior to the date of plaintiff's injury, it had been the regular custom of the night policemen of the city of Bristow to inspect the night freight trains of the defendant railway company upon their arrival in the city; that in making these inspections the city policemen were usually accompanied and assisted by the special officer (Bolin) employed by the defendant railway company. The evidence further shows that about 15 days before the night of plaintiff's injury, the chief special officer of the defendant railway company, Oscar Bearden, came to Bristow and requested the mayor of the city and the chief of police to instruct the night policemen of the city to continue their custom of inspecting night freight trains of the defendant railway company, when they arrived in Bristow, and that the chief of

police with the approval of the mayor of Bristow agreed to comply with the request, and did so inform Oscar Bearden, chief special officer of the defendant railway company, at the time of making the request, and did order and instruct the night policeman of the city of Bristow (the plaintiff) to continue such inspections. The evidence shows that the plaintiff had been in the employ of the city of Bristow as a policeman for a period of about one year, and that about ten days before the injury complained of, he was assigned to night duty; that during the time that he worked as night policeman, and in accordance with instructions given him by the mayor and chief of police, he actively assisted in making inspections of the train upon which he received his injury. The evidence shows that plaintiff received no compensation from the defendant railway company for making the inspections, but he was paid by the city of Bristow a monthly salary. On the night plaintiff received his injury, he rode in a city patrol automobile to the place where the accident occurred, accompanied by three others, one of whom was the special officer of the railway company. The special officer and another took one side of the freight train, and plaintiff and another took the other side. While making the inspection, the plaintiff attempted to pass between two cars of the train, and when he stepped upon the coupling the train started a backward movement and plaintiff's foot was caught between the drawbar and buffer iron and crushed. The plaintiff claims that the train was backed up without any signal or warning, while the defendants claim that the bell was ringing and that the whistle blew three times, preceeding the backward movement. This issue was submitted to the jury who found in favor of plaintiff's contention. The plaintiff received painful and lasting injuries, which is not disputed.

It is plain that plaintiff was an invitee, and as such the defendants owed the plaintiff the duty of ordinary care to prevent injuring him.

The rules of the defendant railway company required that in all movements of trains either the bells must be ringing or the whistles sounded. If a backward movement of the train is intended the rules provide that a brakeman gives the signal, and he is answered by the engineer with three short blasts of the whistle before the train is put in motion. The plaintiff claims that the whistle was not sounded; defendants

claim it was, and even though it was not, defendants claim that there would be no liability of the defendants to the plaintiff.

This court has held:

"Where a brakeman on a freight train, while the train is stationary, enters between two cars for the purpose of turning the angle cocks, disconnecting the airhose, and uncoupling the cars, and the engineer, knowing the position of the brakeman after the cars are uncoupled, suddenly moves the train forward with the throttle of his engine closed, without a warning, and without having received a signal to that effect from the brakeman, and there is a surging back of the forward moving cars, and the brakeman thereby is caught between the knuckles of the drawbars of the separated cars and killed, held, such acts on the part of the engineer are sufficient to authorize a finding of negligence, making the railway company liable in damages in an action brought by the administratrix of the deceased; and this is true, notwithstanding the train on which the accident occurred was moving in interstate commerce, was properly equipped with automatic couplers, which were in good working order, and deceased, either before or after disconnecting the airhose, lifted the coupling pin with his hands." Chicago, R. I. & P. Ry. Co. v. Calloway, Adm'x, 145 Okla. 84, 291 P. 111.

"A brakeman engaged in coupling and uncoupling cars in switching had a right to act on the presumption that the engine would not be moved without a signal." Gal. H. & S. A. Ry. Co. v. Courtney (Tex. Civ. App.) 71 S. W. 307.

"Where a brakeman has gone in to make a coupling, it was gross neglect for the engineer to give the train a quick, sharp motion before he was signaled to go ahead." Louisville & Nashville Ry. Co. v. Grubbs (Ky.) 49 S. W. 3.

The question then presented is: If the engineer moved the train backwards without warning, was it negligence, and if so, was the plaintiff entitled to warning? We think so. Would not an invitee be entitled to as much consideration as a regular employee?

Whether or not a signal was given to move the train backward was a question of fact for the jury, and they have answered the question by their verdict.

The next question presented was whether or not there was contributory negligence on the part of the plaintiff sufficient to bar recovery. Section 6, art. 23, provides:

"The defense of contributory negligence or of assumption of risk shall, in all cases

whatsoever, be a question of fact, and shall at all times be left to the jury."

The learned trial ·judge submitted the question of contributory negligence to the jury with appropriate instructions, and we find no error in the submission.

It is further contended by the defendants that the court erred in giving instructions and in refusing to give instructions offered by the defendants.

The questions thus raised are based largely upon the same contentions and questions of law which we have already herein decided adversely to defendants' contentions, and we find no error therein which would warrant a reversal of the cause. We have carefully examined the instructions given by the trial court, and conclude that the same, considered as a whole, fairly state the law as applied to the issues made and the evidence adduced.

The judgment is affirmed.

The Supreme Court acknowledges the aid of District Judge F. Hiner Dale in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, upon consideration, this opinion, as modified, was adopted by the court.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.