**ST. LOUIS–SAN FRANCISCO RY. CO. v. SIMONS.**

**ST. LOUIS–SAN FRANCISCO RY. CO. v. GRISSOM.**

**Nos. 3876, 3877.**

United States Court of Appeals
Tenth Circuit.

Aug. 8, 1949.

---

G. W. Satterfield, Oklahoma City, Okl. (M. G. Roberts, E. G. Nahler, St. Louis, Mo., and Ben Franklin, Oklahoma City, Okl., on the brief), for appellant.

Harland A. Carter, Okmulgee, Okl., for appellee Anna Simons.

Henry M. Beidleman, Okmulgee, Okl., for appellee Stella Grissom.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellees instituted separate actions for the wrongful death of their husbands by appellant Railway Company in the District Court of Oklahoma County, Oklahoma. The actions were removed to the United States District Court for the Eastern District of Oklahoma where they were tried to a jury in a consolidated action resulting in each case in a verdict and judgment for the plaintiff, from which these appeals were taken.

There is no dispute in the evidence and the facts may be summarized as follows. The tracks in appellant's railroad yards where these accidents occurred run in a northerly and southerly direction. At about 3:30 A.M. on the cold and sleeting morning of March 6, 1948, H. F. Hendricks, a brakeman for the appellant Railway Company, discovered deceased Grissom lying in the railroad yards at Okmulgee, Oklahoma. He was lying between the easterly team track and the track next to it on the west, and very close to the rails of the team track. He was lying in such a position that had he extended his arms or legs they would have been cut off by passing cars. Grissom stated that he had been drinking; that he was not hurt but that he could not get up and that his back was killing him and asked for someone to help him. There were no other brakemen or railroad employees about at the time. Hendricks at the time was engaged in checking a string of cars on the team track which were about to be moved by the train on which Hendricks was working. Hendricks left Grissom where he found him and went north about 125 to 150 yards to a house where he saw a light. He found it occupied by a colored man, Simons, and his wife. He told Simons about Grissom—that he was either drunk or hurt and that something had to be done right away as he, Hendricks, had to get back to his train. Upon inquiry he was informed that Simons did not have a telephone but that there was one across the street. He did not, however, use the telephone. He asked Simons and his wife if they would do something about getting someone down there; he told them that the police should be notified or that someone should go down there to help Grissom; that he had to leave immediately and that "This man was going to get killed. He was in a position to be killed." Hendricks testified that he did not ask Simons to go to Grissom's aid but Mrs. Simons testified that he did ask Simons to go to Grissom's assistance. Hendricks testified further that thereafter Simons came over to where Grissom was lying; that when he, Hendricks, returned to where Grissom was, another brakeman, Cooper, came to the spot; that he did not ask Cooper to see that nothing happened to Grissom; that he did not put flares around Grissom; and that he and Cooper left at the same time. He testified that Cooper left on a train which was about 100 feet south of where Grissom was lying. The cars which were being moved out to be connected to the train on which Hendricks was working were on the team track next to which Grissom was lying. While these cars were being moved out Hendricks stood by Grissom "to hold him down, if necessary, to keep from having his hands or legs cut off by the passing cars." After Hendricks' train had completed its switching operations and was ready to leave, Hendricks returned to Grissom and found Simons with him and asked Simons if he would look after Grissom and was told that he would. At that time Simons was carrying a lighted lantern. Hendricks stated that he had to hurry away then, since his train was already moving. The evidence further discloses that there was a telephone on a pole about 20 feet from the place where Grissom was lying over which Hendricks could have called the operator by merely removing the re-

ceiver from the hook but that Hendricks did not attempt to use the telephone to notify any one of Grissom's condition. It is also without dispute that Grissom could have been moved from the right-of-way by moving him approximately 20 feet east from where he was found. An engineer on another train, going out on the passing track, saw Simons and Grissom. One of them was lying between the track on which his train was going and on the team track, and the other man was standing on the other side of him. As his train was going north, he observed the yard engine backing about 15 cars southward on the team track. Apparently it was the rear of this cut of cars that killed the two decedents. Simons was about 5 feet 2 inches in height and weighed approximately 165 pounds, while Grissom was about 6 feet 2 inches and weighed about 197 pounds.

In the Simons case, special interrogatories were submitted to the jury. The answers to these interrogatories were substantially as follows: That Simons was an invitee in the railroad yards; that the employees of the Railway Company knew of the position of Simons and knew that he was undertaking to remove Grissom from the railroad yards; that Simons' position was a dangerous one in view of all the circumstances; that Hendricks and his co-brakeman were negligent in leaving Simons in such a position; that such negligence was the proximate cause of Simons' death; and that Grissom was intoxicated when found by the Railway Company's employees. The following interrogatory was submitted and answered as indicated below.

"II (b) Was Simons negligent in attempting to remove Grissom from defendant's railroad yards considering Grissom's condition and the surrounding circumstances, or from any other circumstances without regard to Grissom's condition, if in fact you find him to have been intoxicated. Answer yes or no. No."

In the Grissom case, special interrogatories were likewise submitted to the jury. The answers to these interrogatories were substantially as follows: That Hendricks knew of the position of Grissom in the railroad yards; that Grissom's position was a dangerous one in view of all the circumstances; that Hendricks and his co-brakeman were negligent in leaving Grissom in such location and position; that such negligence was the proximate cause of Grissom's death; that Grissom was intoxicated when found by Hendricks; that Grissom was negligent in being in the position he was found by Hendricks. Specifically the court, in the Grissom case, submitted the following interrogatory.

"II (c) Did such negligence contribute to and proximately cause Grissom's Death?"

The answer to this interrogatory was "no."

### Number 3876—Simons.

In this case the appellant Railway Company urges that the verdict and judgment are in conflict with the evidence in that the evidence fails to show that the appellant was guilty of any act of negligence which in any manner contributed to the death of Simons, and that if Hendricks, its employee, was guilty of negligence that such negligence was the proximate cause of the accident and that the court erred in submitting to the jury Interrogatory Number II(b) in the form in which it was submitted.

The statement in appellant's brief, supported not only by the authorities cited therein but by numerous other authorities, that "Courts have consistently held that before a recovery can be had in actions such as these there must be an injury due to negligence, which negligence must be the proximate cause of the injury," correctly states the law. Since all agree that this is the law, no authorities need be cited in support thereof.

Simons was an invitee. It is clear that Hendricks, an employee of appellant, in the course of his employment invited him into appellant's yards and asked him to look after Grissom and remove him or see that he was removed from the yards. The acts and conduct of Hendricks in the course of such employment were the

acts and conduct of appellant. His actionable negligence, if any, was attributable to and binding upon it.

█ The law is well settled in Oklahoma that while the owner or occupant of property is not an insurer of the safety of an invitee thereon, he owes him a greater duty than merely not to injure him wantonly or willfully. He owes him the duty to exercise all reasonable and ordinary care not to injure him. This duty is an active, affirmative, or positive duty and is not discharged by merely refraining from willful injurious acts.[1]

█ Appellant, through its employee, knew that there was a paralyzed helpless man lying next to a rail in its freight yards, on a dark and stormy night, with trains going back and forth. It knew that his position of danger was so great that its employee stood by his side while cars of this train were passing by to make sure that the passing cars would not cut off his hands and legs. It invited Simons, who was a small man, to enter these dangerous yards to perform the arduous duty of removing the heavier paralyzed man from this position of danger knowing that other sections of cars were passing back and forth, without taking any precautions whatever for his safety while performing this service for appellant. Whether this constituted full compliance with its duty to exercise all reasonable care for the safety of its invitee was a question of fact properly submitted to the jury for its determination, and its answers to the interrogatories relating thereto are amply supported by the evidence.

█ Appellant contends that interrogatory II (b) as submitted was erroneous in that it failed to inform the jury of its contention with respect to Simons' conduct which it claimed constituted contributory negligence. Appellant contends that Simons was guilty of contributory negligence in failing to look out for and listen for approaching trains and that the interrogatories, as phrased and submitted, did not place this contention before the jury. The interrogatory was adequate. It asked the jury whether Simons was negligent in attempting to remove Grissom in his known condition or whether he was negligent "from any other circumstances." No doubt, appellant argued to the jury that Simons was negligent in failing to look or listen for approaching cars. The interrogatory was broad enough to include this or any other act of contributory negligence which appellant might have urged against Simons. The difficulty with appellant's position is that there was no evidence showing or tending to show such facts and the jury refused to find, as it was warranted in doing, from the mere fact of his death that he failed to look and listen.[2]

We find no reversible error in Number 3876—St. Louis-San Francisco Railway Company v. Simons.

### Number 3877—Grissom.

In this case appellant likewise contends that the court erred in overruling appellant's motion to dismiss at the close of appellee's evidence and its motion for a directed verdict because the evidence failed to show any actionable negligence on appellant's part, and that if its employees were guilty of negligence, such negligence was not the proximate cause of the accident and that appellee-decedent was guilty of contributory negligence; that the court committed error in submitting to the jury Subdivision (c) of the Interrogatory heretofore set forth "in that said interrogatory required the jury to find that the contributory negligence was the proximate cause of said accident before answering same in the affirmative"; and that the court erred in resubmitting the interrogatories to the

[1] St. Louis-San Francisco R. Co. v. Williams, 176 Okl. 465, 56 P.2d 815; 45 C.J. 823, 38 A.J. 754; Clinkscales v. Mundkoski, 183 Okl. 12, 79 P.2d 562; Hart v. Lewis, 187 Okl. 394, 103 P.2d 65; Atchison, T. & S. F. Ry. Co. v. Kennard, 199 Okl. 1, 181 P.2d 234.

[2] Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Oklahoma City v. Reed, 17 Okl. 518, 87 P. 645, 33 L.R.A.,N.S., 1083; 38 Am.Jur. 987.

jury after the jury had answered Subdivision (b) of Interrogatory Number II in the affirmative.

 The trial court did not err in overruling the motion to dismiss and the motion for a directed verdict and in re-submitting the case to the jury. It is conceded that Grissom was a trespasser and that, as found by the jury, he was guilty of negligence in being in appellant's railroad yards next to the rail in his intoxicated condition. But one is not barred from recovering where his antecedent negligence has placed him in a position of peril, if his peril is discovered in time to prevent injury and the one charged with liability thereafter fails to exercise ordinary care to avoid injuring him. Oklahoma adheres to this rule.[3]

It has been held that where employees of a railroad company, other than those operating its trains, discover a person, known to them to be so intoxicated or otherwise disabled as to be unable to care for himself, in a position of danger on or near the tracks, they owe him the duty either to remove him from the place of danger or to exercise at least reasonable care to avoid injury to him from moving trains.[4] This rule is generally referred to as the doctrine of discovered peril. Plaintiffs relied on the doctrine of the last clear chance to establish appellant's liability. The trial court, however, refused to submit the case to the jury on this theory but did submit it to the jury on the doctrine of discovered peril. Thus, in its instructions, the court said:

" * * * the duty of the railroad to a trespasser on its right of way was no greater duty than not to wilfully injure them, but once the railroad becomes aware of a position of danger on the part of a trespasser, then * * * the duty is upon the railroad, the defendant in this case, to use ordinary care not to injure Grissom, in view of all the facts and circumstances."

 This was the heart of the case; it was the theory upon which it was tried and the issue upon which the outcome depended. While appellant excepted to this instruction, its objection thereto has apparently been abandoned since no error is predicated thereon on this appeal. Whether the case should have been submitted on the doctrine of the last clear chance or what, if any, difference there is in principle between that doctrine and the doctrine of discovered peril, therefore, becomes academic and will not be discussed herein. It is sufficient to state that the case was properly submitted on the doctrine of discovered peril; that the trial court's instructions relating thereto properly advised the jury; and that the jury's answer finding the appellant guilty of failing to exercise ordinary care to avoid injuring Grissom after its employees found him and in a helpless condition in a position of grave peril, finds support in the record.

The late case of Kansas, Oklahoma & Gulf Ry. Co. v. Wickliffe, Okl.Sup., 202 P.2d 423, upon which appellant places strong reliance is not in point. There was no evidence in that case that an employee of the railroad company knew of the deceased's presence along the right of way or that its employees by the exercise of reasonable care could have known of his presence or could have avoided injury to him. The facts are entirely different from the facts in this case. The decision was predicated on the grounds that there was no evidence of negligence sufficient to take the case to the jury. The case did not turn upon the doctrine of discovered peril.

 It is next urged that the trial court erred in submitting Interrogatory II (c) in that it "required the jury to find that the contributory negligence was the proximate cause of the accident before answering same in the affirmative." Whether the interrogatory, when considered in

[3] Texas, O. & E. Ry. Co. v. McCarroll, 80 Okl. 282, 195 P. 139; Willingham v. Panick, 10 Cir., 161 F.2d 614; Barall Food Stores v. Bennett, 194 Okl. 508, 153 P.2d 106; Ramage Mining Co. v. Thomas, 172 Okl. 24, 44 P.2d 19; Atchison, T. & S. F. Ry. Co. v. Miles, 69 Okl. 138, 170 P. 896.

[4] 44 Am.Jur., Page 707; Cincinnati, N. O. & T. P. Ry. Co. v. Marrs, Adm'x, 119 Ky. 954, 85 S.W. 188.

connection with all the other interrogatories, is subject to this criticism need not be answered. No exception was taken by appellant to this interrogatory nor to the court's explanatory instructions relating thereto. In fact, appellant's attorney approved the interrogatories.[5] In this light of the record, the question may not be raised for the first time on appeal.[6]

Finally it is contended that the court erred in resubmitting the interrogatories for reconsideration. At one point in its deliberations the jury informed the court that it desired to ask the court a question. Thereupon it handed the trial court Interrogatory II (b), with the word "yes" written in pencil as an answer thereto. The jury inquired whether by such an answer that would eliminate Grissom's widow. The trial court answered in the affirmative but further advised the jury that, "You are not concerned with the results of that. You have to find the facts as they are." Thereupon, the foreman stated, "We didn't understand some of those questions * *. We will have to return and discuss those further." The jury was then directed to resume its deliberations. After further deliberation, the interrogatory was answered "no."

■ Appellant now urges that it was error for the court to permit the jury to further consider this interrogatory. On the hearing of appellant's motion for a new trial, in discussing this matter with the court, counsel for appellant stated: "Then they asked for further consideration of the case and Your Honor, of course, very properly told them that it was still in their province to consider such as they wished." Having at the hearing of the motion for a new trial conceded that the trial court acted correctly in resubmitting

the interrogatories to the jury for further consideration, the appellant may not now for the first time complain of the court's action with respect thereto.

■ But in any event the trial court's action was correct. Rule 49(b) of the Federal Rules of Civil Procedure provides that:

"When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

Under this rule, as well as by the acquiescence of counsel in the action of the court, no reversible error occurred.

An examination of the entire record in the two consolidated cases leads to the conclusion that no reversible error was committed. The judgment of the court in each of the consolidated cases, Number 3876—St. Louis-San Francisco Railway Company, a corporation, v. Anna Simons, Administrator of the Estate of Fred Douglas Simons, deceased, and Number 3877—St. Louis-San Francisco Railway Company, a corporation, v. Stella Grissom, is therefore affirmed.

---

5 In response to inquiry by the court, appellant's attorney stated: "Now we have no objection to the interrogatories submitted in the Grissom case."

6 Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A.; Interstate Motor Lines v. Great Western Ry. Co., 10 Cir., 161 F.2d 968; Comparet v. U. S., 10 Cir., 164 F.2d 452; Cunningham v. Olson Drilling Co., 5 Cir., 171 F.2d 392.